[Civ. No. 3874. Third Appellate District.—February 7, 1930.]

CLAUD LEMKA, Respondent, v. HARRY NAUMAN, Appellant.

Irving D. Gibson and Gilford G. Rowland for Appellant.

Martin I. Welsh and Joseph W. Mento for Respondent.

PLUMMER, J.—Plaintiff had judgment against the defendant Harry A. Nauman in the sum of $750 for and on account of injuries alleged to have been received by the plaintiff by reason of a collision between an automobile in which the plaintiff was riding and an automobile belonging to the defendant Harry A. Nauman, and driven by the defendant Robert Parks, an employee of the defendant Nauman. From this judgment the defendant Harry A. Nauman appeals.

The record shows that on or about the twenty-sixth day of July, 1926, at the intersection of Nineteenth and L Streets in the city of Sacramento, there was a collision between an automobile owned and driven by the plaintiff, and an automobile owned by the defendant Nauman and driven by the defendant Parks. The record shows that for some years prior to the incident just mentioned the defendant Nauman owned and at the time in question was conducting an undertaking establishment at 1811 G Street in the city of Sacramento; that during all the times mentioned in this proceeding defendant Nauman resided at 1712 N Street, being at a place about seven blocks south of his place of business; that Eighteenth and Nineteenth Streets were the ones usually traveled in going from the undertaking establishment to the residence of the defendant Nauman at 1712 N Street. It further appears from the transcript that the defendant Nauman maintained a garage at his undertaking establishment, and also at the place of his residence; that

at times the Studebaker car belonging to the defendant Nauman, involved in this action, was kept at the garage maintained at the undertaking parlors, and at times would be kept at the garage belonging to the defendant Nauman and situate at 1712 N Street; that the defendant Robert Parks, an employee of the defendant Nauman, slept at the undertaking establishment. The record further shows that the defendant Nauman usually left his place of residence on N Street to go to the undertaking parlors at about 8 o'clock each morning. It further appears that frequently the defendant Nauman would telephone to Parks, when the Studebaker car was housed in the garage on G Street, to bring the car over to the residence of the defendant Nauman and take the defendant Nauman from his residence to the undertaking parlors. In doing this Parks would drive down either Eighteenth or Nineteenth Street and return by one of said streets. The collision referred to in this action occurred at about 8 o'clock in the morning. During the night previous the Studebaker car had been housed in the garage maintained on G Street in connection with the undertaking parlors. The collision was on Nineteenth Street, being one of the streets used in traversing the distance between the two places mentioned, and one of the streets ordinarily used by Parks when on his way to the residence of the defendant Nauman to pick him up and take him to the undertaking parlors. The ownership of the car is admitted; nor is it disputed that the defendant Parks was in the employ of the defendant Nauman. ██ The only issue tendered in this case is whether the evidence of the defendant Nauman is sufficient not only to rebut the *prima facie* case made out by showing the ownership of the car involved in the issue and the fact that the defendant Parks was an employee of the defendant Nauman, and the reasonable inferences to be drawn from the circumstances that the defendant Parks, as an employee of the defendant Nauman, was acting in the course of his employment when driving the car southward on Nineteenth Street toward the residence of the defendant Nauman. It is contended on the part of the appellant that the testimony of the defendant Nauman is such as to demand a judgment in his favor; that it is of such a character that the jury was unwarranted in bringing in a verdict in favor of the plaintiff; that the in--

ference to be drawn from the fact of ownership of the car and the general employment of the defendant Parks is so squarely met by the testimony of the defendant Nauman that a conclusion that the defendant Parks was engaged on a mission in the course of his employment for the defendant Nauman is wholly unwarranted.

In the case of *Fahey* v. *Madden,* 56 Cal. App. 594 [206 Pac. 128], this court, in considering the legal relation necessary to charge the owner of a car, held as follows (we quote from the syllabus) : "In an action for damages for personal injuries caused by being struck by an automobile, proof of ownership of the machine by one person, and its operation by another, with the knowledge and consent of the former, makes out a *prima facie* case of agency between the owner and the operator based on an inference, but that inference will not serve to create a conflict in the evidence as against clear, positive and uncontradicted evidence that such relation did not exist." A number of cases are there cited which we need not review, but we may call attention to the case of *Perry* v. *Paladini,* 89 Cal. App. 275 [264 Pac. 580], where a number of cases are cited having to do with the same subject, and where the same rule of law is affirmed. This leaves but one question to determine: Has the *prima facie* case made out by the admitted ownership of the Studebaker automobile by the defendant in this action, and the fact that it was being driven by an employee of the defendant Nauman, been met by clear, positive and uncontradicted evidence that while the relationship of principal and agent existed between the defendant Nauman and the defendant Parks, that the defendant Parks was not acting within the scope of his agency on the morning of July 26, 1926, at the time of the collision? This is best answered by quoting the testimony of the defendant Nauman, touching the vital question in this case. Called under the provisions of section 2055 of the Code of Civil Procedure, the defendant Nauman testified as follows: "Q. Mr. Parks slept at the undertaking establishment, did he not? A. Yes, sir. Q. Now, isn't it a fact that Mr. Parks would go to your house and take you from your place of residence to your place of business? You would telephone him to come over with the car and he would take you over as a matter of custom? A. No, it was not, no; unless I telephoned to him. I usually walked

over if the car was over there. Some mornings I would feel indisposed, so I would telephone for him to come for me. Q. Now, isn't it true this particular morning you telephoned for Mr. Parks to come over there with the car to take you from your place of residence to your place of business? A. No; I cannot testify to that because I do not know. Q. You cannot say whether you did or not, can you? A. No. Q. On the particular morning of the accident, Mr. Nauman, the Studebaker car was not in your garage back of your place of residence that morning, was it? A. As near as I know it was not at the residence that morning. Q. It was not at the residence that morning? A. No. Q. Isn't it true, the times when Mr. Parks would go from the undertaking establishment over to your place of residence to your place of business, was when the car would be at the undertaking establishment during the night? A. Yes. Q. So far as calling him on this particular occasion on the telephone, you cannot swear whether you did or not, can you? A. I cannot, I cannot, no sir.'' On examination by defendant's own counsel, the defendant testified as follows: ''Q. Now, Mr. Nauman, you knew, as a matter of fact, did you not, that on this particular morning, at the time of the accident, namely, about 7:40 A. M. on the morning of July 26, 1926, that Robert Parks was not doing anything for you with the automobile? A. That I am positive, yes. Q. You are positive he was not doing anything for you at the time of the accident, with the automobile? A. I am positive of that. Q. You are also positive you had given him no directions that morning to drive the automobile for you? A. Yes, I am positive. Q. You recollect hearing afterwards there was a collision at Nineteenth and L streets? A. Oh, yes. Q. If Mr. Parks was driving the automobile at 20 minutes to 8 on the morning of July 26, 1926, then he was driving the car without your permission, was he? A. He was, yes. Q. And without your consent? A. Yes, sir. Q. Had you previously notified Mr. Parks, on different occasions, that he should not use the Studebaker automobile without your consent? A. I had. Q. Had you heard of his using the car without your consent before you had told him not to use it? A. Yes. Q. And told him not to do it again? A. Yes, sir.'' On redirect examination by counsel for plaintiff, Mr. Nauman further testified as follows: ''Q. Now, Mr. Nauman, you

testified just a moment ago that you could not swear whether or not you had telephoned Mr. Parks to bring that car, that Studebaker car, to your house, and take you over to your place of business, didn't you? A. On what day? Q. On the morning of the accident? A. I testified I did not know. Q. That you did not know whether you had telephoned him to bring the car over to your place of residence and take you over to your place of business? A. If I testified, I testified erroneously, because I am positive I did not instruct him to call for me.'' (Here the witness was shown a statement made by him in a deposition taken before a notary public, containing the following questions and answers): ''Q. Well, had you given him permission to use it on this particular morning, the morning of the accident? A. That I cannot tell, either. Q. Do you remember that question being asked you, and you having made that answer? A. Yes, sir. Q. (Reading.) 'Q. You cannot tell whether you did or not? A. No, no.' Was that question asked you, and did you make that answer? A. Yes, sir. Q. (Reading.) 'Q. And, you don't remember whether you telephoned to him to come and to bring the automobile over there, or drive it over there to take you to the undertaking establishment, do you? A. No, I could not tell you that.' Q. Do you remember that question being asked you and you making that answer? A. Yes, sir. Q. (Reading.) 'Q. There were occasions when you would telephone to him and tell him to bring the automobile over to the house to bring you to the undertaking establishment? A. Yes, sir.' Q. That was asked you, and answered? A. Yes, sir. Q. (Reading.) 'Q. And that was quite a common practice on your part, was it? A. Yes, sir.' Q. (Reading.) 'Q. As to whether or not you called him up on this particular morning, and asked him to bring the automobile over there to take you back, you do not recall at this time? A. Not positively, no.' '' Upon further examination of the defendant by his own counsel, the witness stated that he was confused at the time of the examination.

It is evident from a reading of this testimony that there is no clear, positive evidence on the part of the defendant rebutting the inference arising from the fact of ownership of the car and the general employment of the defendant Parks by the defendant Nauman. To be sure, the testimony is

not directly contradicted. However, the testimony is of such a nature that the jury might very well draw the conclusion that the witness had contradicted himself. Again, the circumstance that the employee Parks was driving directly from the undertaking parlors toward the residence of the defendant Nauman, at the hour in the morning when he would usually be driving in that direction for the purpose of picking up the defendant Nauman and taking him to the undertaking establishment, was a matter to be considered by the jury in connection with the testimony of the defendant Nauman, in determining the true facts. Another thing the jury had a right to take into consideration in determining whether the employee Parks was on a mission in the interest of his employer Nauman, on the morning in question, was the leading character of the questions to which he made answer. When questioned by counsel for the plaintiff, the witness testified that he did not know whether he had called Parks on the telephone on the morning of July 26, 1926, and likewise had given the same testimony in a deposition previously taken, but when led by his counsel, he was positive that he had not so telephoned. This presented an issue for the jury to determine as to which statement set forth the truth. If the jury believed the statement of the witness given in answer to questions propounded by counsel for the plaintiff, then and in that case the verdict is amply supported. We cannot, upon appeal, determine that they were wrong in their estimate of the testimony of the defendant; and hence, the requirements set forth in the cases which we have cited and the ones there referred to have not been met so as to justify a reversal. It may be stated that the defendant Parks did not appear upon the trial, and his whereabouts appear to have been unknown to the respective parties, and the cause of action as to him was dismissed.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 8, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 7, 1930.

All the Justices present concurred.