[Civ. No. 9690.   First Appellate District, Division One.—June 24, 1935.]

AXEL MALMSTROM, Respondent, v. M. H. BRIDGES, Appellant.

Myrick & Deering and Scott for Appellant.

James F. Brennan and Walter McGovern for Respondent.

TUTTLE, J., *pro tem.*—By this action plaintiff, a pedestrian, recovered judgment through a jury for $10,000 on account of personal injuries received when he was struck by an automobile. Defendant Bridges appeals from such judgment.

At the time of the accident, which happened in San Francisco, appellant was residing in Eureka, California. She owned an apartment house in the former city, which she paid her daughter, Mrs. Holliday, to manage. Appellant purchased an automobile for the use of her daughter in San Francisco. At the apartment house Mrs. Holliday employed one Hawley to do odd jobs about the place. Appellant testified that her daughter was "general supervisor and manager

of the business down there'', and that the latter was in ''complete charge'' and ''had the authority to hire anybody under those conditions''. Appellant knew that her daughter was employing Hawley. She further testified that ''I did not ever ask Mr. Hawley or direct him to do anything when I was down there. She (meaning Mrs. Holliday) takes care of that.''

The automobile required some repairs. Hawley had some experience in that work, though not while working at the apartment house. He testified that his work consisted of everything to be done about an apartment house, repairing or helping with certain things, ''if there was anything broke I repaired it''. Mrs. Holliday wanted the car repaired so that she could take a trip. She told Hawley to fix it, and gave him the key to the automobile. The latter, in making the repairs, secured the services of a friend, and this was known to Mrs. Holliday. After such repairs had been made, Hawley drove the car to test it out, and while thus driving he drove into a safety zone and struck plaintiff, inflicting the injuries for which compensation is sought.

Appellant's chief contention is that the evidence is insufficient to sustain the verdict, in that the relationship of principal and agent did not exist between appellant and Hawley, and that the latter was not the servant or employee of appellant. It is further contended that at the time of the accident Hawley was not acting within the scope of his employment. Defendant Hawley defaulted; his negligence is therefore conceded and that question is not before us. The sole question is the liability of the owner of the car, defendant Bridges.

As the recovery is in excess of the liability as fixed by section 1714¼ of the Civil Code, we may presume that the verdict was given under the doctrine of *respondeat superior*, or principal and agent. (*Daniel* v. *Jones*, 140 Cal. App. 145 [35 Pac. (2d) 198].) Furthermore, an examination of the record, including all the instructions, indicates clearly that the case was not tried upon the theory of a recovery under the statute mentioned, but upon the theory of *respondeat superior* or principal and agent.

Turning to the evidence in the case, so far as the relations between Mrs. Holliday and Hawley are concerned, the factual structure is almost identical with the situation in *Dierks* v. *Newsom*, 49 Cal. App. 789 [194 Pac. 518]. There

a student in the high school was driving the automobile of his father to the high school for the purpose of repairing the same, and the accident occurred while the student was on his way to the high school. In upholding a judgment against the father, the court said: "The plaintiff made out a *prima facie* case against the appellant when he showed that the auto causing the injury by the negligent manner of its operation belonged to the appellant." In other decisions upon the same question, the courts have taken a similar view that when the fact of ownership is established the court or jury may draw the inference that the party driving the automobile was acting as the agent of the owner, and that the driver was acting within the general scope of his authority to such an extent as to bind his principal. (*McWhirter* v. *Fuller*, 35 Cal. App. 288 [170 Pac. 417]; *Grantham* v. *Ordway*, 40 Cal. App. 758 [182 Pac. 73]; *Randolph* v. *Hunt*, 41 Cal. App. 739 [183 Pac. 358]; *Fahey* v. *Madden*, 56 Cal. App. 593 [206 Pac. 128]; *Perry* v. *A. Paladini, Inc.*, 89 Cal. App. 275 [264 Pac. 580]; *Lemka* v. *Nauman*, 102 Cal. App. 757 [284 Pac. 1062]; *Ransford* v. *Ainsworth*, 196 Cal. 279 [237 Pac. 747]; *Poncino* v. *Reid-Murdoch & Co.*, 212 Cal. 325 [298 Pac. 818], citing the Dierks case, *supra*, as authority.) ▇ There is practically no evidence in the record to justify an inference to the contrary in this case. The evidence all points to the fact that *express authority* was given to the driver by Mrs. Holliday to take the car into his possession and repair it. There is no conflict upon this question of fact. As to authority from the owner of the car, appellant herein, the evidence shows that she turned the car over to Mrs. Holliday for the use of the latter in San Francisco. The owner knew that Hawley was working around the apartment house, for she so testified. An agent may be held for the act of a subagent "when such delegation is specially authorized by the principal". (Civ. Code, sec. 2349, subd. 4.) "If the principal has either expressly or impliedly assented to the subagent's employment, which assent may be implied from slight circumstances, he is liable for such subagent's acts within the course of his employment." (2 Cor. Jur., p. 690, sec. 350.) Hawley was employed to do "odd jobs" for Mrs. Holliday. We are of the opinion that there was sufficient evidence to justify a finding to the effect that Hawley was acting within the scope of his employment when, upon the express direction of Mrs. Holli-

day, he took the car for the purpose of making some minor repairs, and that the evidence also will uphold the implied finding that Hawley was in fact the duly authorized subagent of appellant, and that the latter was therefore liable for the damage done. Furthermore, the fact of agency might have been inferred from proof of ownership under the cases discussed above.

Some fourteen instructions are quoted, and it is contended that by considering them "as a whole" the jury was instructed in substance that it had a right to assume Hawley was the agent and servant of appellant. We do not believe this criticism is justified. These instructions fairly state the law in each instance, and leave to the jury the matter of drawing any inference respecting the matter of agency.

It is contended that the damages are excessive. Plaintiff was struck and knocked some fifty feet, and was in an unconscious condition for a number of days. His left leg was fractured into fragments. The injury was not healed at the time of the trial, some eight months after the accident. The veins in his leg were injured, producing a dropsical condition. He is compelled to lift his leg to allow the blood to syphon out in order to prevent clot and gangrene. His left leg is an inch shorter than his right, and this is permanent. His ability to follow any gainful work in the future is problematical. It is true he was sixty-six years of age, and that he was actually earning only a trifling sum each day, but it may be assumed that the jury considered all these facts and then arrived at a figure which to it seemed just and fair. Following the familiar rule, we cannot say that the award here was so grossly excessive as to shock the moral sense and raise a reasonable presumption that the jury, in reaching its verdict, was actuated by passion or prejudice. (*Grant* v. *Los Angeles Transfer Co.*, 45 Cal. App. 731 [188 Pac. 294].)

We have examined other points raised, but do not find any substantial merit in them.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

Appellant's petition for a rehearing of this cause by the District Court of Appeal was stricken from the files on July

22, 1935, upon the ground that it was grossly intemperate, insolent and disrespectful; and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 22, 1935.