[Civ. No. 3126. Fourth Dist. May 25, 1944.]

ANGELINA STEWART, as Administratrix, etc., Plaintiff and Appellant, v. JOHN NORSIGIAN et al., Defendants; B. J. LaFONTAINE, Respondent; PACIFIC FINANCE CORPORATION OF CALIFORNIA (a Corporation), Defendant and Appellant.

Rae B. Carter and Edmond A. Chevalier for Plaintiff and Appellant.

Crider, Runkle & Tilson for Defendant and Appellant.

Chester O. Hansen for Respondent.

MARKS, J.—This is an action by the administratrix of the estate of James E. Stewart, deceased, to recover damages resulting from his being killed in a collision between a motorcycle which he was riding and an automobile being driven by John Norsigian. The collision occurred in the early morning of either January 21st or January 22d, 1942.

Plaintiff recovered judgment against Norsigian and Pacific Finance Corporation for $25,000 and judgment went in favor of B. J. LaFontaine for his costs. Pacific Finance Corporation has appealed from the judgment against it, and, as a matter of precaution, plaintiff has appealed from the portion of the judgment in favor of LaFontaine. Norsigian has not appealed. Both appeals are presented on the same transcripts so we will dispose of both of them in this opinion.

Pacific Finance Corporation urges that it was not the owner

of the car driven by Norsigian and that he was not its agent, servant nor employee and was not driving the car on its business so no recovery could be had against it. As an alternative it argues that if it be held to be the owner of the car in question, and if Norsigian be held to have been driving it with the corporation's implied consent, its liability is limited to $5,000 by section 402 of the Vehicle Code.

Plaintiff argues that Pacific Finance Corporation was the owner of the car and that its liability arises under the doctrine of *respondeat superior;* that if this doctrine does not apply, then it must be held that Pacific Finance Corporation was the owner of the car which Norsigian was driving, with its implied consent, so that its liability is fixed by section 402 of the Vehicle Code.

Plaintiff assumes the same position in her appeal from the judgment in favor of LaFontaine, but states that if it be held that the Pacific Finance Corporation was not the owner of the car, and, that it is not liable under the doctrine of *respondeat superior,* then it must be held that LaFontaine was its owner and that his liability should be determined at a second trial.

LaFontaine was a dealer in new and used automobiles. He was doing business in the city of Selma in Fresno County under the name of Selma Auto Electric Company.

On August 30, 1941, LaFontaine sold the car in question, a Ford sedan, to Ray R. Blair on a conditional sales contract providing for monthly payments. LaFontaine assigned this contract and his interest in the car to Pacific Finance Corporation and guaranteed payment of the balance due. A registration certificate (pink slip) was issued showing Pacific Finance Corporation as the legal owner and Blair as the registered owner.

A very few days before the accident here in question, two or three, according to the witnesses, Blair drove the car into the place of business of LaFontaine and told him that he was going into the Army or the Navy and he could not continue the payments on the contract and wanted to turn the car back. LaFontaine told him that he should notify the Pacific Finance Corporation at its office in Fresno that he had surrendered the car and had abandoned the contract. Blair replied that he would try to do so as the office did not close until five o'clock. There is no evidence that Pacific Finance Corporation received any notice of the surrender of the car other than

the inference which might be drawn from an affidavit made by its representative, to which we will later refer.

LaFontaine testified that when Blair surrendered the car, he, LaFontaine, became obligated to pay the unpaid balance on the contract; that he could either pay the balance out of his own funds or resell the car and pay the amount due out of the selling price. After the accident LaFontaine paid the balance due Pacific Finance Corporation and became the owner of the Ford. LaFontaine sold the Ford to a Mr. Woodward on March 31, 1942. There was no change in the record of ownership of the car between the time of the issuance of the pink slip when the sale was made to Blair and the time of the accident.

Norsigian was in the employ of LaFontaine as a mechanic. On the afternoon of January 20th or 21st, 1942, he told La Fontaine that he wanted to buy a car and was interested in the purchase of this Ford; that before buying it he wanted to drive it. LaFontaine consented and Norsigian drove it home that evening. He then drove it to Fresno, returning towards Selma on Highway 99 early next morning. The collision which resulted in the death of Stewart occurred about two o'clock on that morning. There is no contention made that the accident was not proximately caused by the negligence of Norsigian.

We will first consider the liability of Pacific Finance Corporation under the doctrine of *respondeat superior*.

There is no evidence that Norsigian was ever employed by Pacific Finance Corporation or that any of its representatives had ever heard of him prior to the accident. The only evidence in the record on that subject is to the effect that Norsigian was employed by LaFontaine.

Plaintiff calls our attention to the well established rules that all conflicts in the evidence are settled in the trial court and that on appeal all reasonable inferences must be drawn in favor of the verdict and judgment. (*Juchert* v. *California Water Service Co.,* 16 Cal.2d 500 [106 P.2d 886] ; *Whitechat* v. *Guyette,* 19 Cal.2d 428 [128 P.2d 47] ; *Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [213 P. 42, 26 A.L.R. 123].) She then argues that one inference may be based on another inference (*West Coast Life Ins. Co.* v. *Crawford,* 58 Cal.App.2d 771 [138 P.2d 384]) and maintains that the various inferences that may be drawn from the evidence support the verdict and judgment.

■ While there is general language in *West Coast Life Ins. Co.* v. *Crawford, supra,* supporting the argument of plaintiff, a study of that case and others shows the rule to be that an inference may be based on another inference when the first inference is the only one which a reasonable mind could draw from the facts proven. It then becomes a proven fact and a subsequent inference may be drawn from it as an inference must be founded on a fact legally proved. (Code Civ. Proc., § 1960.) This is recognized in the opinion in the West Coast Life Insurance Company case.

Plaintiff argues that the doctrine of *respondeat superior* may be invoked here because of the inference of agency which she argues may be drawn where the car, owned by one person, is in the possession of another and is being driven by him. She cites cases in support of this argument such as *Fearn* v. *Ralph Hamlin, Inc.,* 215 Cal. 211 [8 P.2d 1015]; *Ryan* v. *Farrell,* 208 Cal. 200 [280 P. 945]; *Blank* v. *Coffin,* 20 Cal.2d 457 [126 P.2d 868], and *Souza* v. *Corti,* 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861].

■ An examination of these cases and others discloses that such an inference has been drawn under two sets of circumstances: First—Where the operator of the car belonged to the family group of the owner, and second, where the driver was the employee of the owner. Certainly the family group cases cannot apply here. Norsigian was not employed by Pacific Finance Corporation. We have been cited to no case and have found none, permitting the drawing of such an inference, where the driver of the car was not an employee of the owner and was a total stranger to the owner, was not a member of the family group of the owner, and was not operating it under the direction of nor for the benefit of a member of his family.

A search of the record has disclosed no evidence justifying the inference that Norsigian was operating the car as the agent, servant or employee of Pacific Finance Corporation. All of the evidence, and it was all offered by plaintiff, is to the effect that Norsigian was a complete stranger to Pacific Finance Corporation and its representatives, that he was not employed by it and that they did not know he had possession of the car until after the accident.

In *Blank* v. *Coffin, supra,* it was said:

"Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference

shall be drawn, in any given case, is a question of fact for the jury. (See cases cited in 10 Cal.Jur. 738-739, § 60.)

"Usually, the opposing party introduces evidence as to the nonexistence of the fact in issue, and the jury must then determine the existence or nonexistence of the fact from all the evidence before it. If the evidence contrary to the existence of the fact is clear, positive, uncontradicted, and of such a nature that it can not rationally be disbelieved, the court must instruct the jury that the nonexistence of the fact has been established as a matter of law. (Citing cases.) The jury, however, is the sole judge of the credibility of the witnesses (Cal. Code Civ. Proc., § 1847; see cases cited in 27 Cal. Jur. 182, § 156) and is free to disbelieve them even though they are uncontradicted if there is any rational ground for doing so. (Citing cases.) In most cases, therefore, the jury is free to disbelieve the evidence as to the nonexistence of the fact and to find that it does exist on the basis of the inference."

Plaintiff maintains that the jury was fully justified in disbelieving the evidence of Norsigian and LaFontaine that the former was an employee of the latter and that he was not an employee of the Pacific Finance Corporation. She bases this argument on the fact that Norsigian was contradicted by other witnesses as to some of the circumstances of the accident and, on the further fact that LaFontaine made an affidavit that the Ford had not been operated on the highways of California after December 1, 1941, which was contradicted by the proven facts of the case.

While this evidence might furnish sufficient reason for disbelieving the testimony of Norsigian and LaFontaine, that fact cannot aid the cause of plaintiff. If the evidence of these witnesses as to the employment of Norsigian be rejected as untrue, there is an entire lack of any evidence on the question of his employment by anyone. There is no claim that he belonged to the family group of Pacific Finance Corporation, nor to that of any of its representatives, so that question is eliminated from the case. If we eliminate his evidence, and that of LaFontaine, on the subject of employment, there is no evidence on that question and nothing to indicate employment by Pacific Finance Corporation. Under these circumstances there is an entire absence of proof of the fact of employment which must be established in order to support the inference of agency on which plaintiff bases her argument.

It follows that we cannot support the judgment against Pacific Finance Corporation under the doctrine of *respondeat superior*. There is nothing in the record indicating that Norsigian was either its agent, servant or employee and no proven fact to support such an inference.

We must next consider the liability of Pacific Finance Corporation under the provisions of section 402 of the Vehicle Code, which makes the owner of a motor vehicle liable up to $5,000 for death or injury to one person resulting from the negligent operation of the vehicle by a person operating it with the express or implied consent of the owner.

Subdivision *f* of that section, in effect at the time of the accident, provided in part as follows:

"If a motor vehicle is sold under a contract of conditional sale whereby the title to such motor vehicle remains in the vendor, such vendor or his assignee shall not be deemed an owner within the provisions of this section, but the vendee, or his assignee shall be deemed the owner notwithstanding the terms of such contract, *until the vendor or his assignee retake possession of such motor vehicle.*" (Italics ours.)

In order to fix liability under section 402 of the Vehicle Code, two facts, in addition to negligence of the operator, must be established: First, that Pacific Finance Corporation was the owner of the Ford at the time of the accident, and second, that Norsigian was driving it with the consent of Pacific Finance Corporation. In this connection it must be remembered that at that time Pacific Finance Corporation was shown as the legal owner, and Blair as the registered owner on the records of the Motor Vehicle Department, as there had been no change in the registration of the car until after the accident. It must be borne in mind that the car was in the physical possession of LaFontaine on his sales lot in Selma; that he was the original vendor of the automobile with Pacific Finance Corporation as his assignee; that he had an understanding with Pacific Finance Corporation that it would finance new and used cars sold by him on conditional sales contracts and had guaranteed payment of the balance due under the LaFontaine contract.

Under date of January 21, 1941, an agent of Pacific Finance Corporation executed an affidavit for it which contained the following:

"PACIFIC FINANCE CORPORATION OF CALIFORNIA being first duly sworn, deposes and says: That he is the owner within

the meaning of the Vehicle Code of that certain Ford . . .; that as allowed under lease contract dated the 30th day of August, 1941, he repossessed said Ford . . . on or about the 15th day of Jan. 1942, from R. R. Blair, whose post office address is/was 640 Franklin, Fresno, for the following reasons: non-fulfillment of contract. Signed Pacific Finance Corporation of California. Countersigned R. N. Roe, and now has the above described vehicle in his possession."

This affidavit contains the only information in the record of the exact date of the surrender of the car which was regarded as a "repossession" by Pacific Finance Corporation, which stated that on January 21, 1942, it had the car in its possession. As the car was then on the LaFontaine sales lot in Selma, where it had been since Blair surrendered it, the only conclusion to be reached is that the possession by La Fontaine was possession by Pacific Finance Corporation and for it.

When the car was repossessed by Pacific Finance Corporation, as stated in its affidavit, Blair's interest was forfeited under the terms of the contract and Pacific Finance Corporation became the owner of the car as the legal ownership and the registered ownership as shown on the pink slip became merged in it. This conclusion finds some support in subdivision $f$ of section 402 of the Vehicle Code, already quoted, which in effect provides that the conditional sales vendor and his assignee shall not be considered the owner of the motor vehicle "until the vendor or his assignee retake possession of such motor vehicle."

Under the circumstances disclosed here we conclude that Pacific Finance Corporation was the owner of the car as that term was used in section 402 of the Vehicle Code in 1942.

We have little difficulty in concluding that the evidence justified the jury in the implied finding that Norsigian was driving the Ford with the implied consent of Pacific Finance Corporation at the time of the accident. As we have observed LaFontaine had possession of the car for Pacific Finance Corporation and was obligated under his guaranty to pay the balance due on the purchase price. He testified that he could make this payment out of his own funds or by a resale of the car. This stands uncontradicted in the record. He held possession for Pacific Finance Corporation, had the right to sell the car and had it on his sales lot. His right to sell the car would include the use of the usual and ordinary

means of effecting a sale which includes a demonstration to a prospective purchaser. The accident happened during such demonstration. It should make little difference whether the driver, during the demonstration, was an employee of La Fontaine or of the owner, or was the prospective purchaser. As LaFontaine had possession of the car for Pacific Finance Corporation, the owner, and had the right to sell it, the consent of the owner to the demonstration must be implied through consent given by LaFontaine.

We therefore conclude that Pacific Finance Corporation is liable under section 402 of the Vehicle Code in the sum of $5,000 damages caused by the negligence of Norsigian while operating the car with its implied consent.

We must next consider the appeal by plaintiff from the portion of the judgment in favor of LaFontaine.

Norsigian was bailee of the car while he was using it. (*Baugh* v. *Rogers*, 24 Cal.2d 200 [148 P.2d 633].) The liability of LaFontaine must arise, if at all, under the provisions of section 402 of the Vehicle Code. That section fastens liability only on the ''owner of a motor vehicle.'' As we have concluded that Pacific Finance Corporation, and not LaFontaine, was the owner of the Ford at the time of the accident the judgment in favor of LaFontaine was proper.

The portion of the judgment in favor of B. J. LaFontaine is affirmed.

The judgment against Pacific Finance Corporation is reduced to $5,000 and as so reduced is affirmed. As between plaintiff and Pacific Finance Corporation neither party will recover costs of appeal.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied June 19, 1944, and the following opinion was thereupon rendered:

THE COURT.—Plaintiff has filed a petition for rehearing in which she cites numerous cases not called to our attention before. She maintains they support her argument that the inference may be drawn that Norsigian was the agent of Pacific Finance Corporation under the proven facts of the case. She argues that these cases support the rule that the inference of agency may be drawn from possession of the car

by Norsigian with the consent of the owner, without any showing that he was an employee or belonged to the family group of the owner.

She cites *Montanya* v. *Brown,* 31 Cal.App.2d 642 [88 P.2d 745]. In that case the owner consented that his wife, who could not drive, could use the car and that it could be driven by her sister. The trial court rendered judgment against the owner for $35,000 on the theory of agency. The judgment was reduced to the $5,000 permitted under section 402 of the Vehicle Code against an owner where permissive use is established. The family group theory was not considered on appeal although it might have been applicable under the facts of that case, as it might have been held that the car was under the control of the wife although actually operated by her sister, had that question been raised. (See *Souza* v. *Corti,* 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861].)

Plaintiff relies on the case of *Malmstrom* v. *Bridges,* 8 Cal. App.2d 5 [47 P.2d 336]. That case turned on the question of employment and subagency which the appellate court held was established by the evidence, and not on agency inferred from permissive use.

Our attention is directed to the case of *Fahey* v. *Madden,* 56 Cal.App. 593 [206 P. 128]. The defendant Madden was the owner of an automobile which one Boen was driving with his consent at the time of the accident. The jury returned a verdict for plaintiff and the trial court granted Madden's motion for new trial. This order was affirmed on appeal on the ground that the jury was erroneously instructed, as follows:

"It is admitted by the pleadings that the defendant Madden was the owner of the automobile at the time of the accident and that the defendant Boen was driving the automobile at the time of the accident with the permission, consent, and approval of the defendant Madden. This is *prima facie* proof that the driver was engaged in the owner's service and a presumption arises that the automobile was in use for the owner's benefit. Testimony that the automobile was loaned to Boen does not, as a matter of law, destroy the presumption unless from the evidence you find that it was loaned as claimed by the defense. If you should find that the said automobile was not loaned to said Boen as claimed by the defense, and if you also find that the injury to Fahey was the result of

the negligent operation of the automobile your verdict must be for the plaintiff, and against defendants Madden and Boen unless you further find that the plaintiff was guilty of contributory negligence."

This instruction was held to be erroneous and sufficiently prejudicial to support the order granting the motion for new trial.

*Dierks* v. *Newsom*, 49 Cal.App. 789 [194 P. 518], involved a judgment for damages caused by an automobile being driven by one Gregory and owned by the defendant Newsom. The evidence justified the conclusion by the trier of fact, as stated in the last paragraph of the opinion, "that Gregory was authorized by the appellant to take the car for the purpose of having it repaired, its judgment holding the appellant responsible for Gregory's negligence in performing his mission must be affirmed, and it is so ordered." This evidence certainly indicated something more than permissive use and justified the holding of an agency for a special purpose.

In *McWhirter* v. *Fuller,* 35 Cal. App. 288 [170 P. 417], the plaintiff recovered judgment against the defendant who was the owner of an automobile which was being operated by his wife with his express permission and consent. Under the facts before the court it was held that a prima facie case of agency of the wife was established which is in accordance with the rule followed in many jurisdictions where the family group rule is applied.

We fail to understand why plaintiff has cited the case of *Hathaway* v. *Mathews,* 85 Cal.App. 31 [258 P. 712]. It is true that the opinion contains a general statement that the fact of ownership alone establishes a prima facie case against the owner for the reason that the "presumption" arises that the driver is an agent of the owner. From any point of view this is not a technically correct statement of the law as, among other things, it omits the question of permission. Miss Grant was the owner of the car which she had loaned to Neal Mathews for a trip to Venice. On this journey Mathews took Miss Grant to her place of employment and the accident happened while Miss Grant was in the car going to that destination. The trial court rendered judgment in favor of Miss Grant and against Mathews. This judgment was affirmed on appeal because of the facts found. Had judgment gone against Miss Grant it might have been affirmed on appeal

under the rules announced in *Bosse* v. *Marye*, 80 Cal.App. 109 [250 P. 693] ; and *Souza* v. *Corti, supra.* The accident occurred before the adoption of section 1717¼ of the Civil Code which was superseded by section 402 of the Vehicle Code. This is true of the other cases considered here where the accident happened prior to August 14, 1929. (Stats. 1929, p. 565.)

The case of *Perry* v. *A. Paladini, Inc.*, 89 Cal.App. 275 [264 P. 580], contains statements to the effect that proof of ownership and possession is sufficient to establish a prima facie case of agency. The first question decided was the sufficiency of the evidence to support the finding that A. Paladini, Inc., was the owner of the truck at the time of the accident. The trial court so found and the appellate court was of the opinion that the evidence was amply sufficient to support such a finding. The question of the agency of Raymond Zanetta, the driver, was considered at length. A. Paladini, Inc., was engaged in the wholesale distribution of fresh fish and had places of business in Monterey and San Francisco and transported fresh fish by truck from Monterey to San Francisco. Raymond Zanetta had been employed by A. Paladini, Inc., for ten months preceding the accident and was so employed by it at the time of trial. The appellate court made the following comment on this evidence:

''Summarizing the evidence of plaintiff, we have these facts: The truck of appellant, engaged in a business similar to that of the appellant, at a place where the appellant would usually be engaged in the conduct of his business, and being operated by one who previous to the accident and subsequent thereto was in the employ of appellant. It will thus be noted that plaintiff went much beyond the establishing of a *prima facie* case resting upon mere ownership.''

Certainly such evidence was sufficient to support a finding of agency without relying on any inference.

*Ransford* v. *Ainsworth,* 196 Cal. 279 [237 P. 747], is the last case cited by plaintiff in support of her contention that permissive possession and use of an automobile raises the inference of agency without the further proof that the operator is an employee or a member of the family group of the owner or is operating the car for or under the control of a member of such family group. In this case the operator was the husband of the owner which places the case within the family group class.

In practically all of the cited cases there are statements to the effect that the inference of agency arises from the fact of possession and permissive use. Those statements were by way of argument under the facts before the court. The weight to be given them must be measured by those facts and the ultimate action taken on the case. Isolated statements and paragraphs may not be lifted from an opinion and regarded as abstract and correct statements of the law. They must be considered in connection with the factual situation the author of the opinion is discussing. They are modified by such factual situation. This is illustrated in the instant case where we have referred to the family group rule without attempting any exact definition of it. Thus the cases relied upon by plaintiff do not establish the rule that mere permissive use of an automobile raises the inference of agency. They do not cause us to change our views that, in addition to permissive use the plaintiff must also prove either employment of the operator by the owner, or that the operator was a member of the family group of the owner, or was operating the car under the control of or for a member of the family group of the owner in order to justify the inference of agency.

Plaintiff argues that the family group theory has been rejected in California, citing *Perry* v. *Simeone*, 197 Cal. 132 [239 P. 1056]; *Idemoto* v. *Scheidecker*, 193 Cal. 653 [226 P. 922]; *Spence* v. *Fisher*, 184 Cal. 209 [193 P. 255, 14 A.L.R. 1083]; *Ormston* v. *Lane*, 90 Cal.App. 481 [266 P. 304]; *Grillich* v. *Weinshenk*, 64 Cal.App. 474 [222 P. 160], and *Sanfilippo* v. *Lesser*, 59 Cal.App. 86 [210 P. 44]. Speaking very generally, those cases are based on the old and well established rule that in the absence of statute a parent is not liable for the torts of a child. The distinction between those cases, and others which we classify as falling within the family group class, is pointed out in *Sanfilippo* v. *Lesser, supra.*

Prior to the adoption of section 1717¼ of the Civil Code, now section 402 of the Vehicle Code, no right of action existed against the owner of a vehicle simply because he had given another permission to operate it. Such right of action is clearly a creature of statute which limits the recovery against the owner to five or ten thousand dollars, depending on circumstances, and also depending on the further condition that the right of action does not arise "through the relationship of principal and agent or master and servant." If the mere

possession and permissive use of an automobile made the owner liable for the negligence of the operator under the doctrine of *respondeat superior,* then subdivision ''b'' of section 402 of the Vehicle Code is entirely meaningless and there would be no limitation on the amount that an injured plaintiff could recover against such owner. To so hold would be the worst kind of judicial legislation and would nullify a clear and unambiguous enactment of the Legislature. This court cannot legislate and it does not propose to do so. We adhere to the views formerly expressed.

The petition for rehearing is denied.

Respondent's petition for a hearing by the Supreme Court was denied July 20, 1944. Carter, J., voted for a hearing.