[Civ. No. 47689. Second Dist., Div. One. Sept. 28, 1976.]

JOHNNIE CAMPBELL, Plaintiff and Appellant, v.
SECURITY PACIFIC NATIONAL BANK,
Defendant and Respondent.

380

**COUNSEL**

Shapiro, Finn & O'Leno, Shapiro & Finn and David Sabih for Plaintiff and Appellant.

Buck & Smith, Buck, Molony, Nimmo & Ammirato and Vincent A. Ammirato for Defendant and Respondent.

**OPINION**

**HANSON, J.**—Plaintiff Johnnie Campbell appeals from the trial court's order granting the motion of defendant Security Pacific National Bank (hereinafter referred to as "Bank") for a nonsuit in this action for damages for personal injuries.

### The Case

Johnnie Campbell filed an action for personal injuries against defendant Bank and codefendants Beverly Auto Adjusters (hereinafter referred to as "Adjusters") and Scott Johnson, an employee of Adjusters.

In his complaint he alleged that he was injured when he was struck by his own automobile while standing in the driveway at his residence; that the driver of the automobile at that time was Scott Johnson who had come to repossess the automobile; and that Scott Johnson drove the vehicle either negligently or with willful and deliberate intent so as to injure Campbell. At the trial of the case following the close of presentation of plaintiff's evidence, the Bank made a motion for nonsuit on the theory that since Adjusters was an independent contractor and Scott Johnson was its employee, the Bank was not liable for their torts. The court granted the motion on the grounds that the Bank's contract with Adjusters established the relationship of independent contractor, and the Bank, as a matter of law, was not liable as an owner for permissive use of the car (Veh. Code, § 17150). Thereafter, Campbell dismissed his claim for negligence against Adjusters and Johnson and the jury returned a verdict in favor of Campbell on the assault and battery cause of action.

## The Facts

On March 23, 1968, Campbell purchased an automobile from Lamb Chevrolet under a conditional sales agreement which was subsequently assigned to the Bank. The conditional sales contract provided that if Campbell defaulted in his payments, the automobile would be subject to repossession.

On December 4, 1968, Campbell's automobile was repossessed by Adjusters for delinquent payments and the repossession was effected without incident. Campbell was again delinquent in his payments at the time of the repossession which constitutes the basis for this litigation. Accordingly, on August 19, 1970, the Bank entered into a contract with Adjusters to repossess Campbell's automobile. The record discloses that the Bank and Adjusters customarily entered into a new and independent contract assignment for each repossession. The Bank identified the debtor and directed Adjusters to repossess the automobile but did not direct Adjusters as to the method by which the automobile should be repossessed.

On August 27, 1970, Adjusters sent its employee Johnson to repossess Campbell's automobile. Johnson took a friend with him to the Campbell residence where they saw the automobile in the open garage. Johnson's friend steered the automobile while it was rolled out of the garage and

down the driveway into the street. Johnson, whose car was equipped with bumper bars front and rear, began to push Campbell's automobile down the street and away from the residence.

Campbell ran out of his residence through the garage, saw his automobile being pushed away and ran toward it into the street. He testified that he then found himself unable to stop running in time to avoid the car, so he attempted to veer away but in the process he was struck by the left side of his own automobile. Johnson testified that Campbell ran "full bore" into the fender and fell to the ground.

Campbell then got up and ran to the house of his neighbor, Bob Ferris, as Johnson continued pushing the automobile away. Campbell and his neighbor pursued Johnson in the Ferris' car. Ferris pulled his car in front of Johnson's automobile and Campbell got out and positioned himself between the two automobiles. Johnson continued to push Campbell's automobile and Ferris was able to move his car out of the way, but Campbell jumped on the hood of his own car. Johnson continued to push the car for some distance with Campbell on the hood.

Johnson testified that he had shouted, "It's a repo," at the house when Campbell ran out and again when Campbell pursued him. Although Johnson testified that he was traveling only 25 miles per hour while Campbell rode on the hood, Campbell said that the automobile was traveling approximately 40 miles per hour. Campbell also testified that Johnson ran a number of stop signs and red lights while he rode on the hood; since Johnson failed to stop, Campbell had no opportunity to jump off the hood. Campbell further testified that he thought at the time that repossession without a marshal or sheriff was wrongful. However, prior to this occasion Campbell was involved in three similar repossessions.

Campbell introduced evidence that prior to this repossession, the Bank and Adjusters had been sued for wrongful repossession by a man named Fields who alleged that Johnson intentionally injured him while repossessing his automobile. That case was settled out of court for a token amount. Johnson testified that while repossessing automobiles he was occasionally attacked by defaulting owners who resisted repossession.

The trial court made the following findings on the Bank's motion for nonsuit: (1) that Adjusters and Scott Johnson were independent contrac-

tors in their relationship with the Bank; (2) that at the time of repossession the automobile was involved in the business of Adjusters rather than that of the Bank; and (3) that Bank was, as a matter of law, not liable under Vehicle Code section 17150.

*Issues*

Plaintiff Campbell contends that the trial court erred in granting a nonsuit as to the Bank for the following reasons: (1) the Bank is liable for the negligence of Adjusters and Johnson as an owner of a car which was being used in its business with permission (Veh. Code, § 17150); (2) the Bank had employed an independent contractor to engage in an activity which involved a peculiar risk of harm, and should be liable for the torts of that contractor since it failed to take reasonable precautions to prevent them; and (3) the trial court erred in permitting the jury to reduce the verdict for plaintiff's contributory negligence where the only cause of action was for assault and battery.

*Discussion*

I

Plaintiff-appellant Campbell contends that the nonsuit was improperly granted as to the Bank because, among other things, the Bank was liable for injuries caused by the negligence of the driver under the permissive use statute (Veh. Code, § 17150).[1]

" 'The granting of a motion for nonsuit is warranted ". . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." ' (*Raber* v. *Tumin*, 36 Cal.2d 654, 656 [226 P.2d 574].) Thus, before a judgment of nonsuit can be disturbed, there must be some substance to plaintiff's evidence upon which reasonable minds could differ; proof that raises mere speculation,

---

[1]Section 17150 of the code entitled "Liability of private owners" provides:

"Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner. (Stats. 1959, ch. 3, § 17150, p. 1654. Amended by Stats. 1967, c. 702, § 1, p. 2072.)"

suspicion, surmise, guess or conjecture is not enough to sustain his burden. [Citations.] . . ." (*Ulwelling* v. *Crown Coach Corp.* (1962) 206 Cal.App.2d 96, 104-105 [23 Cal.Rptr. 631].) Furthermore, it is not necessary that there should be an absence of conflict in the evidence; there must be a substantial conflict in the evidence to deprive the court of this power. (*Rufo* v. *N. B. C. Nat. Broadcasting Co.* (1959) 166 Cal.App.2d 714, 719 [334 P.2d 16].)

■ In order to impose liability on the Bank under section 17150 it must be shown that the Bank was the owner of the automobile at the time of the accident and that the Bank had given consent, actual or implied, to another to drive the vehicle on its business (*Pacific Tel. & Tel. Co.* v. *Wellman* (1950) 98 Cal.App.2d 151 [219 P.2d 506]). The question whether the Bank was an owner for purposes of imposition of liability for negligence was one of fact. The Bank was legal owner of the vehicle to protect its security interest, while the registered owner at the time of the repossession was Campbell. Generally liability under section 17150 is imputed only to the registered owner (*Oppenheimer* v. *Gordon* (1956) 141 Cal.App.2d 833 [297 P.2d 808]; *Irvine* v. *Wilson* (1955) 137 Cal.App.2d Supp. 843 [289 P.2d 895]; *Bowden* v. *Bank of America* (1950) 36 Cal.2d 406, 414 [224 P.2d 713]).

The only exception to the foregoing principles is that found in Vehicle Code section 17156, which provides in substance that the holder of a security interest shall not be deemed the owner for purposes of imputing negligence "until the vendor or his assignee retake possession of the motor vehicle." ■ It is possible for the legal ownership to merge with the registered ownership upon repossession of the automobile, but whether repossession has been completed in order to raise the inference is, again, a factual issue which must be established by clear and convincing evidence. (*Stewart* v. *Norsigian* (1944) 64 Cal.App.2d 540 [149 P.2d 46, 150 P.2d 554].)

We need not determine whether the factual issue as to the character of the Bank's ownership at the time of the accident was properly resolved by the trial court. ■ Plaintiff-appellant Campbell is foreclosed from raising the issue because he abandoned and dismissed his cause of action for negligence against Adjusters and Johnson at the close of the evidence and before the jury was instructed. Code of Civil Procedure section 581, subdivision 4, provides: "An action may be dismissed in the following cases: . . . (4) . . . By the court, with prejudice to the cause, when upon

the trial and before the final submission of the case, the plaintiff abandons it." Absent a showing of good cause and an express request passed upon by the court that such dismissal shall be without prejudice, this must be held to be a dismissal of the negligence count as to these defendants with prejudice (*Davis* v. *Pine Mountain Lbr. Co.* (1969) 273 Cal.App.2d 218, 227 [77 Cal.Rptr. 825]). A dismissal of a cause of action with prejudice has the same effects as an adjudication on the merits that Adjusters and Johnson were not negligent. (*Davis* v. *Pine Mountain Lbr. Co., supra,* at p. 227.) The doctrine of collateral estoppel is, therefore, applicable to preclude litigation of the vicarious liability of the Bank for the driver's negligence, the only basis for the Bank's liability under section 17150 which is claimed by plaintiff-appellant Campbell on this appeal. (See, e.g., *Datta* v. *Staab* (1959) 173 Cal.App.2d 613, 620 [343 P.2d 977].) Where an employee is found not to have been negligent there can be no vicarious liability of his employer (*Davison* v. *Diamond Match Co.* (1935) 10 Cal.App.2d 218, 222 [51 P.2d 452]). "Thus, a prior judgment in favor of an employee bars an action against an employer whose liability could be predicated only on *respondeat superior.* [Citations.]" (*Ponce* v. *Tractor Supply Co.* (1972) 29 Cal.App.3d 500, 505 [105 Cal.Rptr. 628].) By a parity of reasoning, this principle is applicable to section 17150 liability.

## II

Plaintiff-appellant Campbell further contends that the law in California should be expanded to render the Bank liable for the torts of an independent contractor when the contractor is employed to engage in an activity which involves a peculiar risk of harm and the Bank fails to take reasonable precautions to prevent such harm. Although Campbell concedes that the contract between Bank and Adjusters established an independent contractor relationship, he argues that an additional exception should be engrafted upon the general rule of nonliability of independent contractors (*Widman* v. *Rossmoor Sanitation, Inc.* (1971) 19 Cal.App.3d 734, 743 [97 Cal.Rptr. 52]) to cover the situation of automobile repossession.

The argument is based on the premise that repossession of an automobile is an inherently dangerous activity or one which creates a peculiar risk of harm to others. Campbell relies upon Restatement Second, Torts, sections 416 and 417, for the rule of liability. ■ The Restatement rule is, however, inapposite since it is specifically limited in

application to cases where the negligence of the independent contractor constitutes the basis for liability. (See Rest. 2d Torts, § 427, com. d.) The cause of action based upon negligence was dismissed by plaintiff-appellant at the close of his evidence, and there is no authority for holding the Bank liable for the intentional torts of either Adjusters or Johnson under the circumstances of this case.

Plaintiff-appellant Campbell's claim that the repossession of the car in this instance created a peculiar risk of harm which was known to the Bank and imposed upon it a duty to take special precautions is supported neither by the law nor the facts of this case. Campbell's injuries were incurred as a result of Johnson's intentional misconduct in operation of Campbell's car; there is no evidence that Johnson was armed or that Campbell was shot at. In previous cases in which vicarious liability has been imposed there has been a foreseeable specific risk against which particular physical precautions could have been taken (*Addison* v. *Susanville Lumber, Inc.* (1975) 47 Cal.App.3d 394, 402 [120 Cal.Rptr. 737]). Evidence that Johnson may have been involved in an altercation in previous repossession of the Fields car, and that he had a billy club in his car at the time he repossessed the Campbell car is insufficient to charge Bank with knowledge of Johnson's propensities for violence, if any. The facts do not support negligence, either direct or indirect, on the part of the Bank.

### III

Plaintiff-appellant's final contention is based on the premise that the jury improperly reduced the verdict by an amount attributed to Campbell's contributory negligence. ■ This issue was rendered moot by stipulation of counsel during the jury deliberations to limit the amount of the judgment to $6,000, liability for payment to be shared equally by Adjusters and Johnson. The jury awarded in excess of that amount and the judgment was accordingly reduced to $6,000. A review of the record discloses that the judgment has been fully satisfied.

It is notable that this award of compensatory damages would constitute the upper amount of the Bank's liability in any event. "In *Daniel* v. *Jones*, 140 Cal.App. 145 [35 P.2d 198], the court stated at page 147, 'Since there can be but one verdict for a single sum against the driver and his employer [citation], and since the liability of the latter arises solely by reason of the detriment caused by the former, the

judgments against defendant corporation will be reduced to conform to the judgments against defendant Jones, . . .' (See also *Luscher* v. *Jones*, 140 Cal.App. 743, 744 [35 P.2d 199], and *Bradford* v. *Brock*, 140 Cal.App. 47, 50-51 [34 P.2d 1048].) No other California decision has been found which holds that a recovery against a party secondarily liable is limited to the amount recoverable from the primary tortfeasor, but 'The rule is established, in most jurisdictions in which the question has arisen, that an amount recovered as actual or compensatory damages in a tort action against a servant or other person who was the active tortfeasor is the limit of the amount recoverable as such damages against the master or other person whose responsibility is solely derivative.' (141 A.L.R. 1164-1173.) Thus, the damages determined against the primary tortfeasor . . . judgment would be applicable as an upper limit to the one secondarily liable." (*Ponce* v. *Tractor Supply Co., supra,* at p. 505.)

The judgment is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied October 28, 1976, and appellant's petition for a hearing by the Supreme Court was denied December 16, 1976.