[Civ. No. 17110.   First Dist., Div. One.   Mar. 4, 1957.]

SALVATORE T. PALMA et al., Respondents, v. WATSON SURPLUS LINES AGENCY, INC. (a Corporation) et al., Appellants.

Cooley, Crowley, Gaither, Godward, Castro & Huddleson for Appellants.

Winston Churchill Black for Respondents.

PETERS, P. J.—The respondents, as partners, in 1953 owned a fish cannery in Monterey. They were insured against fire by appellants. The insured premises consisted of three properties, all part of the cannery operation. The fish packing and reduction plant was located at 622 Ocean View Avenue. Across the street at 645 Ocean View Avenue they owned a building and contents, while at 622 Wave Street they owned some fish oil tanks and other property. On October 24, 1953, a fire occurred in the main building at 622 Ocean View Avenue, destroying most of the building and the equipment there located.

The appellants issued fire insurance in the total amount of $256,000 on the cannery properties. These policies contained a "100% Average Clause," whereby liability under them was determined by multiplying the total loss by the ratio of the total amount of insurance to the total actual cash value of the insured premises.

In this state we have a standard form of fire insurance policy (Ins. Code, § 2071), and the policies here involved complied with that section. That section requires the insured, within a specified time, to render to the insurance company a proof of loss. Admittedly, respondents complied with this section, claiming a loss of $252,643, and a liability of the appellants of $223,726.75. The policies and the code section also provide that if the insurance company and the insured cannot agree as to the actual cash value of the destroyed property or the amount of loss, "then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire." If the parties cannot agree upon an umpire then, at the request of either, a proper court shall select such umpire. "The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item." If the appraisers fail to agree, the items on which there is a difference of opinion shall be submitted to the umpire. "An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss." (Ins. Code, § 2071.)

Respondents appointed their appraiser as provided in the policies, but the appellants refused to do so. Respondents then brought an action for declaratory relief. The appellants, in their answer, admitted the execution of the policies, the occurrence of the fire, and timely receipt of proof of loss, but alleged that the demand for an appraisal was premature, that respondents' appointed appraiser was neither competent nor disinterested, and that respondents had failed, in certain specified particulars, to cooperate in the investigation of the loss. In November, 1954, the lower court, in this declaratory relief action, ordered the appellants to appoint an appraiser within 10 days, reserving "the power to make such appraisal itself, or through its designated officers, in the event of the failure or refusal of the defendants to so proceed." In January, 1955, the lower court found that appellants had failed and refused to comply with this order, exercised its reserved power, and decreed that it would proceed "to make such appraisal itself and that such appraisal shall be made upon evidence to be presented by the parties." In February of 1955 a lengthy hearing was had, and on March 29, 1955, the trial court filed "Supplemental Findings of Fact and Conclusions of Law" and a "Supplemental Judgment." On

June 2, 1955, the appellants filed their notice of appeal, purporting to appeal from the "final" judgment of March, 1955, and from the "interlocutory" judgment of November, 1954. In December of 1955, this court, on motion, dismissed the appeal from the November, 1954, judgment, on the ground that if it was a final judgment the notice of appeal was too late, while if it was interlocutory it could be reviewed on appeal from the March, 1955, judgment. In April of 1956 this court denied respondents' motion to dismiss the appeal from the March, 1955, judgment, because it was either a final judgment or a special order after final judgment, and in either event appealable, and the appeal therefrom was timely.

On the present appeal the appellants make no attack on the November, 1954, judgment. Their attack is centered upon the March, 1955, judgment. In that judgment the trial court declared and determined that the actual cash value of the property on October 24, 1953, excluding certain labels insured under another policy, was $289,983, and the loss caused by the fire was $236,962.34.

On this appeal there is no issue made about the total insurance coverage or total loss, and the parties agree that the actual cash value total should include the total values of the three properties insured. The appellants do contend, however, that the actual cash value figure should be higher, which would, of course, place a lower limit on their liability. They make two major points in reference to the actual cash value finding: (1) The trial court should have itemized the actual cash values of all of the insured properties, and (2), the trial court failed to include the actual cash value of all of the insured properties in its total figure.

Respondents contend that neither of these issues should be considered on their merits, because appellants are estopped from raising them. The claimed basis of the estoppel is that appellants refused to appoint an appraiser as provided in the policy, and thus put respondents to unneeded trouble and expense, and deprived them of their contractual right to an appraisal.

■ This estoppel theory was raised in the trial court, and was specifically rejected in the opinion prepared by the trial judge, and impliedly rejected when the court ordered a hearing to make a proper appraisal. Respondents have not appealed and are in no position to challenge the trial court's determinations. ■ Moreover, it is well settled that the insurer's refusal to comply with a demand for an appraisal

does not estop the insurer from contesting the amounts that have to be fixed before its liability can be determined. (7 Couch, Cyclopedia of Insurance Law, 5641; 45 C.J.S. 1373; 29 Am.Jur. 939.)

One of the main questions involved is whether the trial court was required to itemize the loss to each piece of damaged property and to make a separate finding as to the actual cash value of each item. The trial court did not do so.

The trial judge held lengthy hearings, no different in character from any other court proceeding. On March 2, 1955, the following minute order was entered:

"Judgment for plaintiff in the sum of $243,241.34 for loss and damage as follows:

|  | Actual Cash Value | Loss and Damage |
|---|---|---|
| Building | 80,000.00 | 80.000.00 |
| Cannery | 208,383.00 | 150,000.00 |
| Fire Alarm System | 1,600.00 | 1,600.00 |
| Labels | 8,195.00 | 6,279.00 |
| Debris removed | ............... | 5,362.34 |
|  |  | 243,241.34" |

Then on March 29, 1955, findings were filed, one of which reads as follows:

"That the actual cash value of the property described in said policies as 622 Ocean View Avenue, 641 [645?] Ocean View Avenue and 622 Wave Street, Monterey, California, was as of the date of October 24, 1953, prior to said fire, of the sum of $289,983.00 and the loss and damage to said property by reason of the fire on said date was in the sum of $236,962.34; that the actual cash value of the labels included under the separate provisional policy was as of the date of said fire $8,195.00, and the loss and damage by reason of said fire $6,279.00."

The labels mentioned in the last part of the finding were covered under another policy, and are not involved on this appeal.

This was the only itemization made by the trial judge so far as the record discloses. The proof of loss, filed as an exhibit, shows that there were several hundred different items covered by the policies and subject to loss.

It is the law that, when an appraisal is made by appraisers appointed under the terms of a standard form of policy, the appraisers are required to itemize separately the actual cash

value and loss to each item. █ The policy here involved expressly provides, as required by statute, that "The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item." (Ins. Code, § 2071.) The cases seem to hold that such itemization is essential to a valid award. (*Riddell* v. *Rochester German Ins. Co. of New York*, 36 R.I. 240 [89 A. 833]; *Sauthof* v. *American Cent. Ins. Co.*, 34 R.I. 324 [83 A. 441]; see also *Campbell* v. *Union Mut. Fire Ins. Co.*, (R.I.) 124 A. 469, 125 A. 273; 3 Richards on Insurance (5th ed.), 1854; 6 Appelman, Insurance Law and Practice, 385.) ██ It also seems to be the law, and the parties concede, that when the insured sues directly on the policy without a prior appraisal, this requirement of itemization is not present. (22 Appelman, Insurance Law and Practice, 534.)

In the present case the appraisal was made by the trial judge and not by a board of appraisers. The trial judge conducted the hearing as a regular court proceeding and evidence was introduced, and witnesses examined and cross-examined. The question to be decided is whether such a proceeding is to be governed by the appraisal procedure set forth in the policy, or by the rules applicable to ordinary court trials, and particularly to the rules applicable to a suit on the policy.

We have been referred to no cases directly in point, and our research has not disclosed any such cases. But the problem does not seem too difficult.

The policy granted each party, the insurer and the insured, the right to a specific type of appraisal. This appraisal was to be by appraisers appointed by each of the interested parties, and they were to select an umpire. Disputes between the two appointed appraisers were to be submitted to an umpire selected by the appraisers. Obviously, as to such appraisals, itemization is necessary, because there is no reporter present at the appraisers' meetings, and the umpire would have no way of knowing what items were in dispute, and what the nature of that dispute might be. But when there is a suit on the policy itemization is not required because such is a normal court proceeding at which a reporter is present, and the parties offer evidence on the issues involved. Such evidence, as in the instant case, necessarily includes an itemization of the articles insured and damaged, but when the judge comes to draft his findings he is not required to set forth each item, but, as in other cases, may find the ultimate

facts and is not required to set forth the minute evidentiary facts.

In the instant case the insurers failed to comply with the terms of the policy. There is no provision in the policy for the procedure to be followed when either party refuses to appoint an appraiser. The insured appealed to the court by asking for declaratory relief, and the court ordered the insurer to comply with the policy by appointing an appraiser, reserving power to conduct the appraisal in a court proceeding if the insurer failed to comply. The insurer failed to comply and such court appraisal was had. The court in the declaratory relief proceeding in its written opinion, conclusions of law and judgment referred to the "appraisal as provided for in the policies," and when the insurers failed to comply the insured asked the court to make such an order "as it may deem advisable in order to carry out an appraisal as provided in the policies." It is also a fact that the judgment of March, 1955, did not purport to determine liability under the policies. It simply determined the reasonable value of the insured property and the amount of the loss. Thus, the trial court made the appraisal referred to in the policies, as an award. In other words, the award made by the trial court is similar to an appraisal made by duly appointed appraisers.

The basic question is whether when the trial court orders, under its equity powers, the appraisal called for by the policies to be had before it, is it bound to proceed in accordance with the appraisal procedure set forth in the policies and applicable to appraisers appointed by the parties?

Both parties discuss *Saba* v. *Homeland Ins. Co. of America,* 159 Ohio St. 237 [112 N.E.2d 1]. There were involved appraisal provisions identical with those here involved. The insurer, as here, refused to appoint an appraiser. The court held that this amounted to a disagreement to appoint an umpire and the court appointed an umpire to act with the insured's appraiser. The award made by these two was upheld. All that this case stands for is that, when either party to the insurance contract refuses to appoint an appraiser, it is a proper procedure for the court to appoint an umpire instead of relegating the parties to a suit on the policy. This does not mean that this was the only power of the court. In the Saba case the court appointed an umpire to work with the appraiser appointed by the insured. In the instant case the court substituted itself for both the appraisers and the

umpire. Either procedure was proper, under the general equity powers of the court. The Saba case, however, is of no help on the issue here presented, namely, whether, when the court substitutes itself for the appraisers and umpire, is it bound by the provisions of the policy as to how that appraisal must be conducted?

We think that it is quite clear that the court need not, when conducting such appraisal, itemize the property item by item as is required by the policy when the appraisal is made by appraisers appointed by the parties. While it is true that the insurers have not forfeited their right to an appraisal by their refusal to comply with the policy, such refusal has caused the court to substitute a form of appraisal not provided for by the policies. When such substitute method is used it must be accepted in accordance with the traditional procedures applicable to such substituted method. A trial court generally is not required to make minute evidentiary findings, and no reason exists why such court, when making an appraisal, should depart from customary procedures. Because the insurers have made it necessary to adopt a substitute procedure they must accept that procedure with its burdens as well as its benefits. As already pointed out, the itemization procedure is reasonable and proper when the appraisal is made by appraisers and an umpire as provided in the policies. But such itemization requirement is not necessary, reasonable nor practical when the appraisal is made in a court proceeding by a trial judge.

Appellants contend that itemization is necessary in order to allow them to exercise one of their policy granted privileges. The policies provide, as does section 2071 of the Insurance Code, that "It shall be optional with this company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within 30 days after the receipt of the proof of loss herein required." Without itemization, so it is argued, this privilege would be denied to the insurers. The obvious answer to this contention, assuming that it is otherwise sound, is that the 30-day from proof of loss limitation applies both to the privilege of taking the property at the agreed upon appraisal, and to the privilege of replacing or repairing the property. That 30 days, due to the refusal of the insurers to proceed with the appraisal as provided in the policy, expired long before the

trial court made its appraisal. Thus, the right involved, because of the insurers' own actions or lack of action, was terminated.

Appellants argue that the 30-day limitation only applies to the option to rebuild, repair or replace, and not to the option to take all or part of the property at the appraised value, and point to various time provisions in the policy in reference to appraisals in support of this argument. The quoted provision, reasonably construed, makes the 30-day limitation applicable to both options. It should be remembered that, had the insured elected to sue on the policies, no itemization would have been made and the insurers would never have either of the options provided for in the policies and in the statute.　　It is only fair and just that, when the insurers refuse to comply with the appraisal provisions of the policy, and thus have subjected the insured to the expense and trouble of a court proceeding, they should be governed by the rules applicable to such court proceeding and should not be permitted to retain privileges, options and rights that are necessarily predicated on the assumption that both parties will abide by the terms of the policies.

The next major contention of appellants is that the trial court failed to include in its determination of actual cash value the value of certain of the properties covered by the policies. As already pointed out, in order to compute the liability of the insurers it was necessary to first compute the "actual cash value" of all of the insured properties, that is, the actual cash value of all three buildings and their contents covered by the policies. The insurers claim that the findings of the court do not include the actual cash value of the building at 645 Ocean View Avenue, which was not damaged by the fire, nor substantial parts of the building at 622 Ocean View Avenue, which was almost totally destroyed. To support this contention appellants refer to the evidence produced by respondents' panel of experts, to the minute order preceding the judgment and to the findings.

The respondents' evidence concerning values and losses was computed by a panel of seven experts. One of the seven coordinated the figures so that the figures actually presented were the result of the seven appraisals, but there was agreement on each item so that but one set of figures was produced. The panel fixed the cash value of the machinery and equipment at 622 Ocean View Avenue at $202,023.50, and the damage to it as $171,197.50. The cash value of the building

there located was fixed at $80,360, which the panel concluded was a total loss. The cash value of the building at 645 Ocean View Avenue was fixed at $2,400 with no damage, and the cash value of the properties at 622 Wave Street at $4,290 with no damage. Together with certain items not here challenged, the cash value of all the insured properties was estimated at $291,143.50 and the total loss, excluding loss to a stock of merchandise, was fixed at $259,207.50.

The minute order of the trial court reads as follows:

"Judgment for plaintiff in the sum of $243,241.34 for loss and damage as follows:

|  | Actual Cash Value | Loss and Damage |
|---|---|---|
| Building | 80,000.00 | 80.000.00 |
| Cannery | 208,383.00 | 150,000.00 |
| Fire Alarm System | 1,600.00 | 1,600.00 |
| Labels | 8,195.00 | 6,279.00 |
| Debris removed | .............. | 5,362.34 |
|  |  | 243,241.34" |

But when it came to the findings, the trial court provided:

"That the actual cash value of the property described in said policies as 622 Ocean View Avenue, 641 [645?] Ocean View Avenue and 622 Wave Street, Monterey, California, was as of the date of October 24, 1953, prior to said fire, of the sum of $289,983.00 and the loss and damage to said property by reason of the fire on said date was in the sum of $236,962.34; that the actual cash value of the labels included under the separate provisional policy was as of the date of said fire $8,195.00, and the loss and damage by reason of said fire $6,279.00."

In the minute order it will be noted that the court listed "Building" at $80,000, while in the findings the court lists all three buildings and their contents and fixes the cash value (except the labels) in a lump sum of $289,983. Thus, the finding unequivocally declares that the court included the values of all three buildings. But, say appellants, the minute order says the cash value of the "Building" at 622 Wave Street is $80,000, which is within $360 of the figure submitted by the witnesses for respondents. In the same way they urge that "Cannery" at $208,383 in the minute order is within 50 cents of the figures submitted by respondents, which figures, while they included "machinery, etc. at 645 Ocean View Avenue," did not separately list the cash value of the building there located.

The difficulty with appellants' argument is that they are attempting to impeach the finding and judgment by the prior minute order. The finding explicitly and without ambiguity states that it includes the actual cash values of all of the insured properties. It is true that a minute order, or an opinion of the court, may be used to explain an ambiguous finding (*Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740 [47 P.2d 273]; *Coakley* v. *Ajuria*, 209 Cal. 745 [290 P. 33]; *Oldis* v. *La Societe Francaise*, 130 Cal.App.2d 461 [279 P.2d 184]), but it is too elementary to require citation of authority that neither can be used to impeach a finding or judgment.

As already pointed out, the trial court, in its findings, stated that the cash values included all three insured properties and their contents, listing them. It is a possibility that in arriving at these figures the trial court used the computations made by respondents' experts, because the results are in some respects roughly similar. But while this is a possible interpretation of the evidence, minute order and finding, it is by no means the only reasonable interpretation. The rough similarity of totals is all that appellants can point to to challenge the finding. That is not enough to impeach the finding, because there is evidence to support the finding. Thus, there is evidence that the cash value of the building at 622 Ocean View Avenue was only $20,000—not the $80,360 testified to by respondents' panel of witnesses. The panel estimated the cash value of the building at 645 Ocean View Avenue at a mere $2,400 and it is reasonable to infer that the computation of the cash value of the "Cannery" in the minute order of $208,383 included this item.

Under such circumstances we must accept the computations in the finding as correct. They have not been impeached by appellants.

The judgment of March 29, 1955, is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 3, 1957, and appellants' petition for a hearing by the Supreme Court was denied May 1, 1957. Traynor, J., was of the opinion that the petition should be granted.