UNIVERSAL UNDERWRITERS INSUR-
ANCE COMPANY, a corporation,
Appellant,

v.

AMERICAN MOTORISTS INSURANCE
COMPANY, a corporation, Appellee.

No. 20091.

United States Court of Appeals
Ninth Circuit.

June 29, 1966.

Hill & Hill, Clayton Janssen, Jr., Eu-
reka, Cal., for appellant.

Wm. C. Bacon, Wm. F. Stone, of Ba-
con, Mundhenk, Stone & O'Brien, San
Francisco, for appellee.

Before CHAMBERS, POPE and
HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge:

Plaintiff, Universal Underwriters In-
surance Company (Universal), seeks re-

imbursement from defendant, American Motorists Insurance Company (American), for money expended by Universal in settlement of a personal injury suit. Universal is the insurer of K. B. McCarthy (McCarthy), a partnership engaged in the sale of new and used automobiles in Eureka, California; and American is the insurer of Crocker-Anglo National Bank. Federal jurisdiction is conferred by 28 U.S.C. § 1332 (1964).

The present controversy between the two insurance companies arises from the ownership and use of a 1957 Dodge automobile which was involved in the personal injury suit settled by Universal. This Dodge was sold on August 6, 1957 by McCarthy to Cecil Wolf on a conditional sale contract. McCarthy immediately assigned the conditional sale contract to the bank with recourse. Simultaneously with the execution of the conditional sale contract, Wolf signed a document authorizing the bank to transfer and deliver the certificate of ownership of the automobile only to McCarthy upon satisfaction of the contract. This apparently was to secure McCarthy for any materials installed or work performed on the Dodge. The vehicle was then registered with the California Department of Motor Vehicles, the bank being shown as the legal owner and Wolf as the registered owner.

By April 22, 1958, Wolf was in default in his payments to the bank. The bank turned the account over to Joseph Scheiber, operator of an independent collection agency, who repossessed the Dodge on April 23, 1958 and delivered it directly to McCarthy. Wolf was notified by the bank of the repossession and the intent of the bank to resell the Dodge. McCarthy also contacted Wolf and urged him to resume payments to the bank. This proved futile and Wolf executed a power of attorney in favor of McCarthy, enabling the latter to transfer title to the automobile in the event of resale.

Service and reconditioning work was performed by McCarthy upon the automobile, and on April 29, 1958 it was taken into stock as a used car for resale. Similar work was performed on May 2, 1958. On that date the bank billed McCarthy for the balance due on Wolf's conditional sale contract. No payment was made by McCarthy to the bank until June 30, 1958.

On May 4, 1958, Eris McCarthy, wife of one of the McCarthy partners, while driving the Dodge, struck and injured four-year-old Vickie Graf. The district court found that at the time of the accident, Eris McCarthy was operating the Dodge with the permission of McCarthy but for her personal use.

The automobile was resold by McCarthy on June 30, 1958. The balance remaining on the Wolf conditional sale contract was paid to the bank which endorsed and delivered the certificate of ownership to McCarthy. McCarthy then exercised the power of attorney which had been granted by Wolf and transferred ownership of the Dodge to the new purchaser.

As a result of the May 4 accident, an action was filed against Eris McCarthy on August 14, 1958 in the Superior Court of the State of California, in and for the County of Humboldt. Neither McCarthy nor the bank were named as defendants. Defense of the suit was turned over to Universal, McCarthy's insurer; Universal in turn demanded that American, the bank's insurer, defend that action. This demand was refused and Universal compromised the suit on February 1, 1960, for $15,000. In reaching this settlement, Universal incurred legal fees and costs totalling $1,746.92. No contention is made that the amount paid by Universal or the costs and fees incurred were unreasonable.

Universal brought the present suit for a declaration of rights and liabilities under the respective insurance policies and a monetary award sufficient to reimburse it for all, or at least a proportion, of the sums expended to settle the personal injury action. Universal contended that Eris McCarthy was insured under both policies but that, due to the application of the "other insurance" clauses of

the respective policies, American's coverage is primary and it must therefore bear the full cost of defending and settling the suit brought on behalf of Vickie Graf.

After a trial, the district court sitting without a jury, entered judgment for American denying the relief sought by Universal. In a Memorandum and Order filed January 21, 1965, the district court stated that Universal's claim for relief was based on section 17150 of the California Vehicle Code, which makes the owner of an automobile liable for damages resulting from the negligent operation of the vehicle by a person using it with the permission of the owner. The district court found that the bank was the sole owner of the Dodge within the meaning of section 17150 and McCarthy was a bailee. It was assumed by the district court that McCarthy had permission from the bank to allow Eris McCarthy to operate the Dodge.

Despite the finding that the bank was the owner of the Dodge and the assumption that Eris McCarthy was operating the vehicle with the permission of the owner, recovery from the bank's insurer was denied. The district court's reasoning can best be summarized by the following quotation from its Memorandum and Order:

"Section 17150 provides only for the owner's liability to injured parties. Sections 17152 and 17153 establish that an owner who is held liable under § 17150 may recover from the operator. Section 17154 provides that a bailee who permits another to drive the vehicle with the express or implied permission of the owner is himself deemed an operator within the meaning of the aforesaid sections. As between the owner and the 'operator,' then, the ultimate burden is to be borne by the operator. Accordingly, it would be anomalous to permit such an operator to recover from the owner for his liability * * * whether satisfied by payment on a judgment or settlement. The insurance carriers here are in no different position than their respective insureds."

The district court misconstrued Universal's theory of recovery. At no time has Universal placed reliance upon section 17150 of the California Vehicle Code. That statute is not involved in this case; no attempt is being made to fasten imputed liability on the bank as owner of the Dodge. Rather, Universal's contention is that at the time of the accident, Eris McCarthy was an "insured" within the terms of the bank's automobile liability policy, and that American, the bank's insurer, was therefore liable under its policy to discharge all or part of the financial obligation incurred by Eris McCarthy while operating the Dodge.

If American's policy did in fact extend coverage to Eris McCarthy, it would not be the least bit anomalous to allow recovery to Universal; this result would represent, in effect, the discharge by American of its obligation to an insured. This is not a case of a negligent operator attempting to shift liability to the vehicle owner who in turn would have recourse against the operator. Instead, it is an attempt to bring the operator, Eris McCarthy, within the coverage afforded by the alleged owner's insurance policy.

In its brief, American reiterates the district court's rationale but contributes no additional reasoning for its applicability in this case. Recognizing that we will affirm the lower court judgment if a proper basis can be found, American has advanced alternative grounds for affirmance. These grounds, in effect, challenge various aspects of the theory advanced by Universal.

Universal's theory may be stated in five steps: (1) the bank was the sole owner of the Dodge at the time of the accident and Eris McCarthy was operating the vehicle with the bank's permission; therefore she was covered under the definition of "insured" in Insuring Agreements III of the American policy; (2) as to such coverage, paragraph 14 of the "Conditions" of the American policy provides that liability under that pol-

icy is to be prorated with any other "valid and collectible" insurance available to the insured; (3) Eris McCarthy is also covered by Endorsement A 20 F of Universal's policy, which endorsement states that any insurance afforded thereby is "excess" over any other "valid and collectible" insurance that is available; (4) under California law, where an insured is covered by two policies having "other insurance" clauses of the kinds referred to above, the policy which contains the "prorate" clause (here American) is primary and the "excess" policy (here Universal) is secondary; and (5) under California law Universal is therefore entitled to recover all of its expenses incurred in defending and settling the Graf action.

American argues that even if the judgment in its favor cannot be sustained on the theory adopted by the trial court, dismissal of the action was nevertheless correct because Universal is not entitled to win on its theory. Two reasons are relied upon for this view.

First, American argues that Eris McCarthy was not covered under the definition of "insured" in Insuring Agreements III of the American policy. Three grounds are relied upon by American in support of this assertion. One is that, contrary to Universal's contention, the bank was not the owner of the Dodge at the time of the accident, or was, at least, only a co-owner. Another is that, contrary to Universal's position, Eris McCarthy did not have the bank's permission to drive that automobile at the time of the accident. The third ground is that the Dodge is not listed in the schedule of 113 "owned" automobiles referred to in paragraph 6 of the Declarations of the American policy, and the only coverage in that policy which could cover the Dodge is Endorsement No. 4, pertaining to repossessed automobiles, but that endorsement only insures the bank.

The second reason advanced by American why Universal cannot prevail on its theory is that Eris McCarthy was insured under the Garage Endorsement of Universal's policy, and the "other insur-

ance" clause of the Universal policy does not apply to that endorsement.

Universal does not agree that the failure to list the Dodge in the schedule attached to American's policy denies coverage to Eris McCarthy. While insisting that she is covered by the definition of "insured" in Insuring Agreements III of the American policy, Universal argues that if it be held that coverage of the Dodge can be had only under Endorsement 4 of that policy, it covers Eris McCarthy as well as the bank. Universal concedes, however, that in this event, American's coverage would be "excess" only which, Universal asserts, would call for prorating according to the policy limits of the two policies. Universal also contends that even if Eris McCarthy is covered under the Garage Endorsement of Universal's policy, the "other insurance" clause of that policy is applicable.

Universal's assertion, disputed by American, that at the time of the accident the bank was the sole owner of the Dodge, presents a question of fact. As before noted, the district court found the fact to be as alleged by Universal.

Challenging this finding of fact, American cites a number of "acts of ownership" performed by McCarthy while the Dodge was in its possession between April 23, 1958 and June 30, 1958. These acts allegedly indicative of ownership were: (1) on April 24, McCarthy informed Wolf to get in touch immediately and that action would be taken after five days; (2) McCarthy accepted a power of attorney to transfer the Dodge from Wolf; (3) on April 26 and again on May 2, the Dodge was lubricated and repaired by McCarthy; (4) the Dodge was taken into stock as a used car on April 29; (5) Royal McCarthy drove the Dodge home on May 3, and on May 4, gave Eris McCarthy permission to drive it for her personal use; (6) the Dodge was resold and on June 30, McCarthy exercised the power of attorney to transfer ownership of the Dodge to the new purchaser.

The district court considered these facts but nevertheless made an express

finding that the bank was the sole owner of the Dodge at the time of the accident and McCarthy was acting as a bailee. In reaching this conclusion the district court placed particular reliance upon the registration record and transfer procedures prescribed by the California Vehicle Code.

It is undisputed that the bank was registered as the legal owner of the Dodge. But American urges that a certificate of registration does not conclusively establish true ownership, citing Davis v. Joseph, 148 Cal.App.2d 889, 905, 307 P.2d 958, 962; and that a conditional vendor or his assignee holds only a security interest which does not carry the normal incidents of ownership, citing Bowden v. Bank of America Nat. Trust & Savings Ass'n, 36 Cal.2d 406, 414, 224 P.2d 713, 717.

■ The bank, however, held more than a security interest in this automobile, for in addition to being the legal owner, the bank had repossessed it from the conditional vendee. After repossession by the legal owner, the registered owner's interest was forfeited under the conditional sales contract, leaving the legal owner as the sole owner. See Stewart v. Norsigian, 64 Cal.App.2d 540, 149 P.2d 46, 50, 150 P.2d 554.

■ We do not find the acts performed by McCarthy to necessarily be "acts of ownership." The cited acts are not inconsistent with the district court's conclusion that McCarthy was a bailee rather than an owner of the vehicle. Nor do we think that the receipt by McCarthy of the power of attorney transferred Wolf's ownership interest to McCarthy. The power of attorney was not exercised in favor of McCarthy, and the evidence indicates that it was intended only to facilitate resale of the Dodge.

■ Further support for the district court's finding can be found in the "Dealer Plan Agreement" which was executed by the bank and McCarthy. That agreement, which applied to the contract for sale of the Dodge, contains the following provision pertinent to repossessed automobiles:

"Should Bank elect to tender possession of any vehicle without receiving immediate payment, Dealer, as Trustee, will execute and deliver to Bank, as Entruster, upon request, a Trust Receipt in Bank's standard form describing such vehicle. Until payment to Bank is made such vehicle and Contract shall be and remain the property and subject to the order of Bank."

Although the bank, in this instance, did not request a trust receipt, it is apparent that the parties to the dealer agreement considered the bank the owner of repossessed automobiles and the dealer as a trustee or as the district court characterized it—a bailee.

We hold that the evidence supports the district court's finding that the bank was the sole owner of the Dodge and McCarthy was a bailee.

■ As indicated above, however, Universal's assertion that Eris McCarthy was covered under the definition of "insured" in the Insuring Agreements III of the American policy, requires Universal to establish not only that the bank owned the Dodge, but that Eris McCarthy was driving it with the bank's permission at the time of the accident.

Since American denies that she was driving with such permission another critical question of fact is presented. As to this issue of fact, however, the district court has made no finding. The court assumed, for the purposes of the theory which it pursued, that Eris McCarthy had such permission, but this does not amount to a factual determination.

Until this question of fact has been determined, any consideration of the legal issues presented by the theories of Universal and American, as reviewed above, would be premature and hypothetical. Only if it is found that Eris McCarthy had such permission will it be necessary to reach these other issues, in which event those legal issues should first be resolved by the district court.

Remanded for further proceedings consistent with this opinion.