David L. BEARD and Champlin Petroleum Company, Appellants (Defendants),

v.

Donald A. BROWN, Administrator of the Estate of Wallace Glenn Napier, Deceased, Appellee (Plaintiff).

R. L. FRAILEY, INC., a corporation, Appellant (Defendant),

v.

Donald A. BROWN, Administrator of the Estate of Wallace Glenn Napier, Deceased, Appellee (Plaintiff).

David L. BEARD and Champlin Petroleum Company, Appellants (Defendants),

v.

Patricia R. BULLER, Appellee (Defendant).

Nos. 5162, 5163 and 5183.

Supreme Court of Wyoming.

Aug. 15, 1980.

Lawrence A. Yonkee, Redle, Yonkee & Arney, Sheridan, signed the brief of appellants Beard and Champlin Petroleum Company and appeared in oral argument on their behalf. Gary M. Greenhalgh, Greenhalgh, Bussart & West, Rock Springs, signed the brief of appellant R. L. Frailey, Inc. and appeared in oral argument on its behalf.

Robert A. Johnson, Rock Springs, signed the brief and appeared in oral argument on behalf of Brown, Administrator of the Estate of Napier. John C. Brooks and W. W. Reeves, Vlastos & Reeves, P.C., Casper, and John Zebre, Rock Springs, signed the brief of appellee Buller. W. W. Reeves, Casper, appeared in oral argument on behalf of Ms. Buller.

Charles E. Greenhawt, Russell, Greenhawt & Rummel, Rawlins, filed an Amicus Curiae brief on behalf of Stewart Scott Brazell, in support of appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

Each of these cases arises out of an automobile accident which occurred on an unimproved county road,[1] known as Sweetwater County Road 4–26, at about 5:45 p. m. on July 26, 1975. Patricia Buller (Buller) was traveling westward on the road in her 1972 Dodge Colt station wagon, having left her place of employment with R. L. Frailey, Inc. (Frailey),[2] at the end of the working day.[3] David Beard (Beard) was traveling eastward on this same road in a four-door 1974 Plymouth Fury, which was owned by his employer. Beard was a senior drilling engineer with Champlin Petroleum Company (Champlin) and was using the road to visit drilling sites which Champlin was developing and producing at various points along this county road.

Buller and Beard collided with one another at a point approximately one-half mile east of the junction of County Road 4–26 and State Highway 430. As a result of the collision, Buller suffered severe injuries and a passenger in her car, Wallace Glenn Napier, was killed.[4] Napier is represented in this suit by the administrator of his estate, Donald A. Brown (Brown) and all references to Napier's contentions in these appeals will be referred to with the name "Brown." Beard, who was wearing a seat belt, was not seriously injured.

Beard testified that as he was traveling eastward on the road he met two or three cars traveling in the opposite direction. He related that these cars kicked up a cloud of dust that hung over the westbound lane but did not totally obscure the eastbound lane. Beard stated that he had clear vision in his lane and first saw Buller's car as it emerged from the dust on the opposite side of the road. Beard testified that the Buller car came across the center of the roadway at a gradual angle into the path of his car. Beard applied his brakes and turned to the left[5] to avoid the Buller car but they none-

---

1. The road was described as being a graded dirt road with some gravel on the surface.

2. The worksite was several miles east of the point where Sweetwater County Road 4–26 joins Wyoming State Highway 430 about 14 miles south of Rock Springs. Frailey was in the process of constructing a natural gas processing plant.

3. Buller worked a nine-hour shift but was compensated for eleven hours of work. Frailey did

this to compensate its employees and keep them on the job because of the long drive to and from work.

4. Another passenger in Buller's vehicle, Brazell, is a party in another pending action. Brazell appeared as amicus curiae in this case.

5. A gully came up to the south edge of the road. Beard's car skidded some 66 feet to the point of impact and these skid marks move somewhat from right to left. The highway pa-

theless collided on Beard's side of the road. The cars collided right-front side to right-front side. The following diagram derived from the testimony of both Buller and Beard as well as a highway patrol officer who investigated the accident scene helps to explain the situation at the time of impact [6]:

path of Buller car

path of Beard car

Buller testified that she was lost in a cloud of dust at the time of the accident and that she did not know for certain the position of her vehicle on the roadway at the time of the accident:

"A. Last thing I remember as I was looking over my right side headlight, and I was leaning forward attempting to find the side of the road, and at that point in time, I couldn't see. I could barely see the front of my car."

Beard testified that he was traveling about 40 mph at the time of the collision. This is also the speed he reported to the investigating officer at the scene. Buller testified that she was traveling 25–30 mph, although she had told the investigating officer at the scene that she was traveling 50 mph.

The testimony at trial established that County Road 4–26 was, in fact, a county road but that both Champlin and Frailey had participated in grading and watering the road so as to make it suitable for their use. The grading was done to smooth the road and the water was used to enhance compaction and reduce dust. The purpose of the grading and watering was to make the road passable for large trucks delivering construction materials, et cetera, to both Frailey's worksite and to Champlin's various worksites, as well as to make the road more passable for the employees who used it.[7] No grading or watering had been performed on the road immediately prior to the occurrence of the accident.

Brown sued both Buller and Beard, asserting that both were negligent in operating their automobiles. Brown joined Frailey and Champlin asserting that both Buller and Beard were acting within the scope of their respective employments. Frailey disputes that Buller was acting within the scope of her employment, claiming that the mere fact that she received two extra hours of pay to compensate for her driving to and from work did not make these trips within the scope of her employment. Champlin, on the other hand, concedes that Beard was acting within the scope of his employment, and thus Champlin may be held to pay for any negligence attributable to Beard.

trolman who investigated said that in his opinion Beard was closer to the righthand edge of the road when he perceived the danger than he was at the point of collision. This, of course, tends to corroborate Beard's story of the accident.

6. The cars rotated upon impact so that the final resting place of the automobiles did not represent the point of impact. However, according to the testimony of a highway patrol officer, the point of impact was in Beard's lane, and the cars came to rest rather decidedly in Beard's lane.

7. The road was used by a large number of employees of both Frailey and Champlin. Although this area could also be reached from Rock Springs by way of I–80 and the Patrick Draw Road, most persons used County Road 4–26. The traffic was concentrated around 7:00 a. m. and 5:30 p. m. Although it is of no great significance, some 125 to 135 Frailey employees were on the job on the day of the accident. There were usually around 90 employees on the job for Champlin in the area.

Buller crossclaimed against Beard alleging he was negligent in operating his motor vehicle. Brown claimed and Buller crossclaimed against Champlin and Frailey on the theory they had negligently maintained County Road 4–26.

These three cases were consolidated and tried together in the district court. The judgment produced three separate appeals and they were also consolidated for this court's consideration. The following is a concise statement of each of these three appeals. However, the issues are so interrelated that it is convenient and more understandable to treat them as though they were one case.

### Appeal Number 5162

Beard and Champlin are appealing the jury's findings that (1) Champlin was negligent in maintaining the road, and (2) Beard was negligent in operating his motor vehicle, vis-a-vis the appellee-Buller.

### Appeal Number 5163

Frailey is appealing the jury's findings that (1) it was negligent in maintaining the road, and (2) Buller was acting within the scope of her employment at the time of the collision, vis-a-vis the appellee-Brown.

### Appeal Number 5183

Beard and Champlin are appealing the jury's findings that (1) Champlin was negligent in maintaining the road, and (2) Beard was negligent in operating his motor vehicle, vis-a-vis the appellee-Brown.

In this appeal, we are confronted with several, difficult negligence issues: (1) Are the appellants Frailey and Champlin liable to the appellees Buller and Brown because of their failure to maintain Sweetwater County Road 4–26 in a safe condition? (a) What duty did Frailey and Champlin have in that regard, (b) Whom did the duty protect, and (c) If there was in fact a duty, was the failure to perform it the direct cause of appellees' damages? (2) Was appellee-Buller acting within the scope of her employment at the time of the collision, hence making Frailey liable for her negligence on

the basis of respondeat superior? (a) Was Buller within the scope of her employment on the basis that she was paid by Frailey two extra hours of compensation to travel to and from work? (3) Is there evidence from which a jury could find that appellant-Beard was negligent?

A theory of recovery upon which both Buller and Brown relied sought to hold Frailey and Champlin liable under the black-letter rule set out in Restatement of the Law of Torts 2d, § 323 (1965):

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as *necessary for the protection of the other's person* or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care *increases the risk of such harm,* or

"(b) the harm is suffered because of the other's *reliance upon the undertaking.*" (Emphasis added.)

Based on this theory of recovery, the jury was instructed by the trial judge as follows:

### "INSTRUCTION NO. 3

"Brown also claims damages from Frailey and Champlin, or either of them, and Buller also claims damages from Champlin arising out of the same collision, which Brown alleges were sustained because Frailey and Champlin, or either of them, and which Buller alleges were sustained because Champlin agreed to maintain, and thereafter negligently maintained the county road on which the collision occurred, and that such negligence was, either wholly or partially, a direct cause of Napier's death, Buller's injuries, and any damages sustained by them. Both Defendants have denied they agreed to maintain the road, and denied that it was negligently maintained by them.

"Brown must prove, by a preponderance of the evidence, in support of his claim for damages, from either or both Defendants, all of the following only insofar as they pertain to Napier:

"1. That Frailey and Champlin, or either of them, undertook, either gratuitously or for a consideration, to maintain the county road.

"2. That in undertaking such maintenance either or both of them recognized, or should have recognized, that such maintenance *was necessary for Napier's and Buller's protection.*

"3. That the negligent failure of either or both of them to maintain the road either *increased the risk of harm* to Napier and Buller, or in the alternative, caused Napier's death and Buller's injuries, if any, because of their *reliance upon such maintenance.* [Emphasis added.]

"Buller must prove, by a preponderance of the evidence, the same things Brown must prove, but only as against Champlin, and only as they apply to her.

"Brown need not prove negligence and liability against both Frailey and Champlin, but may establish negligence and liability as to either or both Defendants whose negligence and liability he is able to prove. That is to say you could find against or for either or both of them, as far as Brown is concerned. Buller's case, in this regard, relates only to Champlin.

"Brown's claim of negligent maintenance has nothing to do with his claim that Frailey and Champlin were negligent because of the alleged negligence of Buller and Beard in the manner in which they were driving their respective automobiles and whether or not Buller was acting within the scope of her employment."

### "INSTRUCTION NO. 4

"Initially, neither Frailey nor Champlin had any duty to maintain the county road. Such duty can arise by some acts of either or both of said Defendants, and whether that duty has arisen is a question of fact to be determined from the evidence as presented, including the nature and extent of any agreement or undertaking, the duty to be performed if any, and the area and period of time encompassed thereby, if any.

"If Frailey or Champlin undertook either gratuitously or for a consideration to maintain the county road which the County had a duty to maintain, which maintenance Frailey and Champlin, or either of them, *recognized or should have recognized as necessary for the protection of Napier and Buller,* either or both may be subject to liability to Napier, and Champlin may be subject to liability to Buller for physical harm resulting from their failure to exercise reasonable care to maintain the road, if:

"1. Their failure to exercise reasonable care *increased the risk of harm* ; or

"2. The harm was suffered because of Napier's *reliance* upon such maintenance by Frailey and Champlin, or either of them, or in the case of Buller, *upon such maintenance* by Champlin.

"However, as you have been instructed, if Frailey and Champlin undertook such maintenance, and if they violated any duty to so maintain it in any of the particulars above noted, such violation must also have been a direct cause, either wholly or partially, of Napier's death, Buller's injuries, if any, and any damages sustained." (Emphasis added.)

█ And in the special verdict form, the jury was asked to answer and as indicated did answer the following questions:

"2. Q. Did either or both of the following undertake, and thereafter have a duty, to maintain the county road?

| | Yes | No |
|---|---|---|
| "a. R. L. Frailey, Inc. | X | __ |
| Champlin Oil Company | X | __ |

"If your answer is 'No' as to both companies, you will not answer Question 3 but will answer Question 4. If your answer is 'Yes' as to either or both companies, you will answer Question 3 as to that company.

"3. Q. Were either or both of the following negligent in the manner in which they maintained the county road?

| | Yes | No |
|---|---|---|
| "a. R. L Frailey, Inc. | X | __ |
| Champlin Oil Company | X | __ " |

We conclude that the district court erred in so instructing the jury and allowing them to be asked and to answer questions 2 and 3 of the special verdict. Error rests in the fact that there was no evidence before the jury from which the jury could reach those questions. Before an instruction can be given, there must be evidence before a jury upon which they may apply the rule of law given by the court. *Edwards v. Harris*, Wyo.1964, 397 P.2d 87, 90–91. See, *Brubaker v. Glenrock Lodge International Order of Odd Fellows*, Wyo.1974, 526 P.2d 52, 54–59. The court correctly stated the law in Instructions 3 and 4. There just were no facts to which it could be applied.

The restatement and accompanying authorities hold a defendant liable, under circumstances such as we have here, *if his failure to exercise care increases the risk of harm, or if the harm is suffered by the plaintiff's reliance on the undertaking.* Clearly, the jury decided that Champlin and Frailey undertook to maintain the road. But that is only the first step in the analysis. We shall proceed on the assumption that they had undertaken to maintain the road.[8]

■ First, in this case, there was absolutely no evidence that the maintenance performed by Champlin and Frailey *increased* the risk of harm. The evidence only shows that they undertook to maintain the road periodically both to make it smooth and to reduce the dust. But there is nothing in the evidence to demonstrate that this increased the risk of harm to those who used the road. There is no evidence to even suggest that the maintenance performed by Frailey and Champlin created the dust— only that periodically the maintenance effort reduced the dust. Buller and Brown assert that testimony to the effect that the road was dustier than usual on the day of the accident and that it was dustier than it had ever been, proved that Champlin and

Frailey increased the dust condition through their maintenance efforts. We disagree. All that was proved by that testimony is that the dust was very bad on the day in question. It cannot be inferred that the cause was the maintenance done by Frailey and Champlin without there being some evidence to that effect. Moreover, there is no evidence from which it could be inferred, and appellee has shown no authority which would indicate that Frailey and Champlin were obligated to maintain this road in a dust-free condition (*i. e.*, pave or oil it). It is common knowledge that dirt roads become dusty when traveled upon. What Champlin and Frailey could not, and did not, do was *increase* the risk of harm. From the evidence, it is only possible to conclude that the maintenance work in fact periodically *reduced* the risk of harm. There is a glaring absence of evidence that Champlin or Frailey by their maintenance created the dust.

■■ Second, there is no evidence that the harm suffered by the plaintiffs in this case was the result of reliance on what Champlin and Frailey did in the way of maintaining this road. Were we to conclude otherwise, we would be saying that appellee-Buller was free to drive blindly through the dusty air at 25 to 50 mph without having to take into account the fact she could not see. The appellee did not come upon a hidden obstruction or one that they might anticipate would not be present because she thought the road was being properly maintained. Rather she drove into a cloud of dust that was plainly visible, apparently relying on divine guidance—not Champlin or Frailey—to carry her safely through. Buller was acutely aware that dust was seriously reducing her ability to see the road and so testified. Under such circumstances, the plaintiff could not be said to have relied on Champlin's and Frailey's maintenance efforts as contemplated

8. Because of our disposition and the scope of § 323 of the Restatement, supra, it is unnecessary for us to decide the question of whether there was sufficient evidence to sustain the jury's findings that Frailey and Champlin undertook to maintain the road and did so negli- gently. It is a rather close question in this case but even assuming they did undertake and thereafter have a duty to maintain the county road and did so negligently in a factual sense, they may not be held liable, as this opinion points out.

by § 323 of the Restatement. All that she relied on was that there was no other traffic on the road, which was foolhardy. In order to succeed on the theory described in § 323 of the Restatement, the appellees were required to aver and prove that (1) Champlin and Frailey increased the risk of harm to appellees through their undertaking to repair the road, or (2) the harm suffered by appellees occurred because they relied upon the undertaking of Champlin and Frailey to repair the road. *Otto v. American Mutual Insurance Company,* 1976, 241 Pa.Super. 423, 361 A.2d 815, 820. See also, *Teichman v. Potashnick Construction, Inc.,* Mo.1969, 446 S.W.2d 393, 399–400; *Chisolm v. Stephens,* 1977, 47 Ill.App.3d 999, 365 N.E.2d 80, 86–87. The record is barren of any evidence of either required element of proof. Neither Frailey nor Champlin can be held liable on the basis that they violated a duty to properly maintain the road having once undertaken to do such maintenance because appellees failed in their burden of proof. This is a case of failure of proof, not a case in which a jury reached a decision in the presence of a conflict of evidence, which we would usually accept.

■■ Negligence consists of (1) a duty, (2) a violation of the duty, (3) proximately causing, (4) the injury. *Danculovich v. Brown,* Wyo.1979, 593 P.2d 187. The duty referred to is a "legal" duty, the definition of which is for the court as a matter of law. *Lemley v. United States,* D.C.N.D. W.Va. 1970, 317 F.Supp. 350, aff'd 4th Cir. 1971, 455 F.2d 522; *Guinand v. Atlantic Richfield Co.,* 10th Cir. 1973, 485 F.2d 414; *Maxted v. Pacific Car & Foundry Co.,* Wyo.1974, 527 P.2d 832. A legal duty is an obligation, the performance of which is required by law. *Cleveland, C., C. & St. L. Ry. Co. v. Ballentine,* 7th Cir. 1898, 84 F. 935; Prosser, Torts, 4th ed., p. 206 (1971).

■ Of the many legal duties which arise contractually or noncontractually, expressed or impliedly, there are none which would obligate Champlin or Frailey to keep the road here involved free of dust. The suggestion that the duty which arises from the voluntary assumption to perform an act, i. e., the act must be performed in such a manner as to not increase or create a danger to one relying upon the performance, is not applicable to this situation. *Cummings v. Henninger,* 1925, 28 Ariz. 207, 236 P. 701; *Indian Towing Co. v. United States of America,* 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48; *Kotarski v. Aetna Casualty and Surety Co.,* D.C.E.D.S.D. Mich.1965, 244 F.Supp. 547, aff'd 6th Cir. 1967, 372 F.2d 95.

In addition to the lack of evidence that a danger was increased or created and that plaintiffs' actions were in reliance on the performance by Champlin and Frailey, there was no duty in the first instance on the part of Champlin or Frailey to keep the road dust free. Such a duty cannot arise from the fact that they sprinkled it from time to time or from the fact that they smoothed it from time to time. Some common sense must be used. They could not logically assume a duty to keep the road dust free. The only way anyone could keep the road dust free would be to pave it. Even then, in the hot and windy locale, dust could be blown across the road in considerable volume. Continuous sprinkling could result in dust abatement only on that part of the road a few miles behind the sprinkler. Customarily, maintenance of non-hard surface roads has never included the element of freeing them from dust. The requirement would be almost impossible.

■ The fact that the task of smoothing and sprinkling the road was undertaken on one or several occasions does not create a duty to do so continuously. The task must be done without creating or increasing risks to others while it is being consummated; but, without more, it does not bind one to performance of the task on a permanent basis. Numerous incidents in everyday life can be cited wherein a helpful task is accomplished for someone on one or more occasions without obligating a continuation of performance. E. g., running a snow blower around the block and over neighbors' walks, jump starting a neighbor's automobile, etc. The instructions and verdict questions were further improper in this respect.

The jury was also asked to decide if Patricia Buller was acting within the scope of her employment. The jury was instructed:

## "INSTRUCTION NO. 8

"An act within the course and scope of employment or authority is an act of an employee which occurs while the employee is engaged in the duties which she was employed to perform and such act is, or reasonably appears to be, necessary and proper to accomplish those duties. It is not necessary that a particular act or failure to act be expressly authorized by the employer to bring it within the scope of employment or authority, and it may be impliedly authorized, but such act must bear some genuine relationship to the business of the employer. The employee is within the scope of employment if it occurs while the agent is engaged in the duties which she was employed to perform and relates to those duties. Conduct for the benefit of the principal which is incidental to, customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the agent's employment.

"If, at the time of the accident, Buller was engaged in furthering Frailey's business interests, *and with respect thereto Frailey had the right to control the details of the work*, Buller was acting within the scope of her employment with Frailey. It is immaterial whether Buller was using a Frailey vehicle, or her own vehicle if the above criteria are met, and also immaterial even if she was combining her own business with Frailey's business, so long as she was also engaged in furthering Frailey's business." (Emphasis added).

In the special verdict form, the jury was asked if Buller was acting within the scope of her employment with Frailey at the time of the accident. The jury answered "Yes." We conclude that the trial court erred in submitting this issue to the jury because the evidence would not support charging the jury on the issue of scope of employment. There must be evidence for the consideration of the jury to which an instruction may be applied. *Edwards v. Harris*, supra; *Brubaker v. Glenrock Lodge International Order of Odd Fellows*, supra.

The only evidence which could arguably be said to support this theory is that Buller received two hours of additional pay. This court's decision in *Miller v. Reiman-Wuerth Company*, Wyo.1979, 598 P.2d 20, 22–24, set out the limitations of this theory of recovery in some detail. Before an employee may be held to be acting within the scope of his employment, it must be demonstrated that the activity is (1) activated in part by a purpose to serve the employer; (2) done with the intention to perform it as a part of or incident to a service on account of which the employee is employed; and (3) performed to further the business interests of the employer in some part. Buller was a clerk in Frailey's office and her functions were to keep time records for payroll, do bookkeeping and general office management work. The travel was not performed as a part of the purpose for which Buller was employed and it seems obvious that travel to and from work did not work a benefit to Frailey except in a most indirect sense. In this case, we see no difference between Frailey allowing extra pay for travel time and, e. g., vacation pay. *Miller v. Reiman-Wuerth Company*, supra, 598 P.2d at 24. The facts of this case fit within the rule that: Reasonable minds could not differ in concluding that Buller was not within the scope of her employment, and hence the matter was a question of law that should have been decided by the court. Id., 598 P.2d at 23–24; *Combined Insurance Company of America v. Sinclair*, Wyo.1978, 584 P.2d 1034, 1042.

The record is clear that the only benefit Frailey received for the two hours pay given to Buller was that it encouraged her to continue in Frailey's employ—it made her a "happy" employee, so to speak. Frailey had absolutely no control and never attempted to exercise any control over Buller, or any other employee, insofar as her travel to and from work was concerned. See *Miller v. Reiman-Wuerth Co.*, supra,

598 P.2d 23; *Combined Insurance Company of America v. Sinclair*, supra, 584 P.2d at 1043.

As a general rule, an employer is not liable for his employee's conduct while the latter is traveling to and from work in his own car. Annot., "Employer's liability for negligence of employee in driving his own car," 52 A.L.R.2d 287, §§ 8 and 9, pp. 303–316 (and see Later Case Service). From the state of this record, we can only conclude that Buller, at the time of the collision, was not actuated by a purpose to serve Frailey; Buller's activity in returning home was not done with the intention to perform it as a part of or incident to a service on account of which she was employed; and Buller was not furthering the business interests of appellee in any way at the time of the collision. *Miller v. Reiman-Wuerth Co.*, supra, 598 P.2d at 24. She was only going to the place where she would further the interests of her employer by performance of the work for which she was hired. We hold that the mere fact that Frailey agreed to pay Buller for the approximate amount of time consumed in traveling to and from work, did not bestow on Frailey any direct benefits or right of control. To hold that by simply making these payments Frailey opened itself up to liability for any tortious act Buller might have committed while traveling to and from work would be potentially unfair and far beyond the scope of the doctrine of respondeat superior. The mere fact that an employee is remunerated or paid by employers for time traveling to and from work does not place that employee within the "scope-of-employment" rule in a negligence case. *State v. Superior Court In and For County of Maricopa*, 1974, 111 Ariz. 130, 524 P.2d 951, 954; *Heide v. T. C. I., Incorporated*, 1973, 264 Or. 535, 506 P.2d 486, 489–491; *Balise v. Underwood*, 1967, 71 Wash.2d 331, 428 P.2d 573, 577. Contra, *Luth v. Rogers and Babler Constr. Co.*, Alaska 1973, 507 P.2d 761. While we must concede that not all courts have seen eye-to-eye on this point, we are comfortable with our conclusion that the mere payment of travel remuneration without more, as in this case, does not bring an employee within the scope-of-employment rule so as to render the employer liable in the context of a negligence action. This rule we find to be consonant with the prior rulings of this court on the question and consonant as well with the concept of liability based on fault.

Superficially, this may appear to be in conflict with a rule adopted by this court in the worker's compensation context:

"'As a general rule, no compensation is recoverable by an employee who is on his way to or from work, but there are exceptions to the rule. Among the exceptions recognized are where, in going to and from work, the means of transportation is provided by the employer, or the time consumed is paid for or is included in wages.'" *In re Jensen*, 1947, 63 Wyo. 88, 178 P.2d 897, 900; and see, *Wyoming State Treasurer, ex rel. Workmen's Compensation Department v. Boston*, Wyo. 1968, 445 P.2d 548; *Matter of Willey*, Wyo.1977, 571 P.2d 248, 250–252.

The rule stated in the above citation is considerably broader than was necessary to accommodate the facts of the cases in which it has been used. In two of the above-cited cases, the employer was either active in arranging or providing transportation for an employee. By saying this, we do not intend to overrule or limit in any way the holdings of those cases. It is sufficient to point out that they are all worker's compensation cases and, as such, their holdings are not generally applicable in the negligence area. To be injured within the course or scope of one's employment in the context of the worker's compensation system is not the same thing as to be in the course or scope of one's employment and cause injury to a third person who is foreign to the employee-employer relationship, which is the foundation of worker's compensation system. Worker's compensation is a creature of statute and one designed especially to protect workers injured in the course of their work. The statute is liberally construed to provide coverage to the worker. Within the context of the statute, the employer has a

*special duty* vis-a-vis the employees who work for him. Under worker's compensation, an employee is covered for injuries which arise " * * * out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence * *," § 27–12–102(a)(xii), W.S.1977. This states a problem of proof different from that which is encountered in the negligence area.

The rule which we have adopted for worker's compensation cases cannot be applied to a negligence case. Our general negligence theory is one based on *fault* —worker's compensation and many other statutory schemes are of a no-fault nature. Within the general negligence sphere, the rules regarding "scope of employment" are somewhat different. This is so for a number of reasons. A liberal statute designed to benefit workers is not involved. There is no special relationship giving rise to a special duty as in worker's compensation. There is no sound reason for finding liability without fault for social or economic reasons.

The Arizona Supreme Court recently addressed this question:

"* * * [T]he going and coming rule was largely judicially developed in order to provide compensation to workmen for injuries which were incurred while within the range of dangers associated with their employer's premises. There can therefore be no reason to apply it to a situation where the recipient of the benefits of the rule is not an injured workman." *Driscoll v. Harmon*, 1979, 124 Ariz. 15, 601 P.2d 1051, 1052.

We agree with this reasoning.

The rule as regards "scope of employment" in the general negligence sphere is that set out in *Miller v. Reiman-Wuerth Co.*, supra, i. e., there must be some direct benefit to the employer and the employer must exercise some control over the employee. Buller was in no different status than her two passengers who were likewise being paid and doing nothing but being carried to the place where they too would commence the duties for which they were employed. To the extent that rule is inconsistent with the worker's compensation rule, the inconsistency is explainable, sound, and well-grounded as discussed above.

The final question which has been presented to us is whether the evidence is sufficient to sustain the jury's verdict that Beard was negligent. Beard argues that there is no such evidence. The general subject matter that is of concern is exhaustively annotated. Annot., "Liability for motor vehicle accident where vision of driver is obscured by smoke, dust, atmospheric condition, or unclean windshield," 42 A.L.R.2d 13, esp. §§ 155–159, pp. 31–321 (and see Later Case Service). Based on the evidence presented at trial, we cannot say as a matter of law that a fact finder could not find that Beard was negligent. It is quite possible that the jury would disbelieve Beard's testimony that he could see clearly in his lane when there was much testimony that the other lane was totally obscured. Therefore, it is a possibility that the jury might have decided that Beard too was negligent in continuing to drive at 40 mph on a dusty, totally obscured road, even though the accident occurred in his lane of travel. See 42 A.L.R.2d 13, supra. It does appear that both Beard and Buller should have been traveling at substantially lower speeds or perhaps have pulled off the road entirely for a time. Where the vision of the driver of an automobile is obscured, whether by lights of an approaching car, fog, smoke or for any other reason, it is his duty to stop or reduce speed until visibility is restored. *Runnion v. Kitts*, Wyo.1975, 531 P.2d 1307. However, this is clearly a question of fact for the jury and so held in *Runnion*.

The unnecessary complications that were presented to this jury inhibited their functioning and thus we are unable to derive a sound verdict from the conclusions they drew. We are deeply concerned that the jury placed the negligence of the parties as follows regarding the deceased Napier (Brown): Buller 5%; Beard 5%; Frailey

20%, and Champlin 70%. As to Buller's injuries, they found as follows: Buller 5%; Beard 5%; and Champlin 90%. The problem arose, of course, because Frailey was not a defendant vis-a-vis Buller because of worker's compensation coverage. The issue is not raised and in any event moot because of our decision; and so we do not decide it. But Frailey's negligence, if there had been any, should have also been weighed in the balance as regards Buller's injuries even though they ultimately might pay nothing as a matter of law as a result of their negligence because of worker's compensation coverage. Even though not a party to a particular claim, the percentage of negligence, if involved, must be computed and apportioned by the jury as though that party were joined. *Chrysler Corp. v. Todorovich*, Wyo. 1978, 580 P.2d 1123.

The jury decided that Buller and Beard were each 5% negligent in each of the two special verdicts. While this suggests the jury divided the negligence equally among Buller and Beard, we are nonetheless placed in the position of having to assume that the jury would have also equally divided the 90% of the negligence which is not unassigned as a result of our holdings which eliminate Frailey and Champlin from liability on account of road conditions. The only issue left is an apportionment of negligence causing the death of Napier between Beard individually and as agent of Champlin, and Buller's negligence. Such a determination is for the trier of fact not this court. The issue of the money amount of damages need not be retried since no question is raised in that regard.

As a final result, we reverse this judgment and remand the case to the district court for a new trial only to the extent consistent with this opinion.

McCLINTOCK, Justice, dissenting in part and concurring in part, with whom ROSE, J., joins.

Notwithstanding the fact that the place where Mrs. Buller worked was an isolated location, removed from any available housing, and despite the fact that Frailey paid her an additional two hours compensation because of the necessity of traveling a considerable distance over unpaved and dusty roads, the majority reject the existence of even a factual question as to whether she was within the scope of her employment at the time of the accident and hold as a matter of law that Frailey had no responsibility for her negligence. They do this on the basis of the general rule that an employer is not liable for his employee's conduct while the latter is traveling to and from work in his own car. However, this "going and coming" rule is recognized by the majority, as well as many authorities, as being subject to exceptions, a prime example of which is where some special purpose of the employer is served or benefit received by him from the use of the car by the employee. This court does not seem to have had occasion to consider this rule and its exceptions in a negligence case where an injured person seeks to impute the negligence of the employee to the employer. However, in worker's compensation cases it has applied the exception to reach the conclusion that an employee injured while traveling to and from work had sustained an injury which arose "out of and *in the course of employment while at work * * *.*" § 27–12–102(a)(xii) W.S.1977. (Emphasis added.) See *Matter of Willey*, Wyo., 571 P.2d 248 (1977); *Jensen v. Manning & Brown, Inc.,* 63 Wyo. 88, 178 P.2d 897 (1947); *Standard Oil Co. v. Smith,* 56 Wyo. 537, 111 P.2d 132 (1941). As the law was summarized in *Willey*, quoting from *Jensen*,

"'. . . [W]hen other circumstances are injected such as where the employer himself as a part of the employment arrangement supplies transportation to and from the place where the duties of the employee actually commence, an exception to the general rule arises and a different result ensues.' 178 P.2d at 900. "In *In re Jensen* we approved the application of this exception to injuries sustained in a motor vehicle accident by employees who drove their own cars to and from an oil-well site and were reimbursed by the employer on a mileage basis for the distance driven." 571 P.2d at 250–251.

In *Standard Oil Co.*, where the employee was killed while returning to his home from a vacation but had stopped en route to pick up two barrels of oil to be used in the course of the employee's business at the place to which he was returning, the court answered affirmatively the question "whether the workman was injured while performing service within the scope of his employment." In *Jensen* it was necessary for the court to find that the sustained injuries were "a result of their employment and while at work," § 72–106(k)(1) C.S.1945, and to avoid specific language therein that compensable injury should

"... not include injuries by the employee occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence." Id.

The statute in *Willey*, § 27–311(n), W.S. 1957, 1975 Cum.Supp., required an injury "arising out of and in the course of employment while at work . . ." The plain and simple question before us is whether Mrs. Buller was "in the course of employment" and "at work" when she was driving home from her remote place of work.

I fail to see how one can be within the scope or course of his employment for worker's compensation purposes and not similarly within such employment for negligence purposes. At least one other court has been able to distinguish the cases to its satisfaction. See *Luth v. Rogers and Babler Construction Company*, Alaska, 507 P.2d 761, 764 (1973), but I do not find the distinction satisfactory. Perhaps the best statement concerning the similarity in the two situations is set forth in decisions of the California courts. In *Hinman v. Westinghouse Electric Company*, 2 Cal.3d 956, 88 Cal.Rptr. 188, 471 P.2d 988, 991, n. 3 (1971) we find this statement:

"Although the test under the workmen's compensation law of 'arising out of and in the course of the employment' (Lab.Code, § 3600), is not identical with the test of 'scope of employment' under the *respondeat superior* doctrine * * * both fields of law are concerned with the allo-

cation of the cost of industrial injury; and the two tests are closely related (see 2 Harper and James, *supra*, pp. 1377–1378)."

As stated in *Rodgers v. Kemper Construction Co.*, 50 Cal.App.3d 608, 124 Cal.Rptr. 143, 149 (1975), citing *Hinman*,

"... the test for determining whether an employer is vicariously liable for the tortious conduct of his employee is closely related to the test applied in workers' compensation cases for determining whether an injury arose out of or in the course of employment. * * * This must necessarily be so because the theoretical basis for placing the loss on the employer in both the tort and workers' compensation fields is the allocation of the economic cost of an injury resulting from a risk incident to the enterprise."

The latest decision I have found approving this statement is *Brittel v. Young*, 90 Cal. App.3d 400, 153 Cal.Rptr. 387, 391 (1979).

In *Huntsinger v. Fell*, 22 Cal.App.2d 803, 99 Cal.Rptr. 666, 668–669 (1972), it is said:

"Thus, while it may constitute pouring new wine into an old bottle, the 'going and coming' rule and its exceptions in the tort cases are concerned with the allocation of the economic cost of an injury resulting from a risk incident to business enterprise, and the social philosophy underlying the rule and its exceptions in the tort field is now substantially similar to that underlying workmen's compensation."

After discussion of the *Hinman* and other decisions, the court concludes:

"* * * The indication is, therefore, that the rule announced in *Smith v. Workmen's Comp. App. Bd.*, supra, 69 Cal.2d [814] at p. 820, 73 Cal.Rptr. 253, 447 P.2d 365 is applicable to the case at bench notwithstanding *Smith* was a workmen's compensation case." 99 Cal. Rptr. at 669.

I must therefore reject as meaningless and unsupported assertion the majority's statement (616 P.2d at 736) that

"[i]t is sufficient to point out that [previous decisions of this court] are all worker's compensation cases and, as such, their holdings are not generally applicable in the negligence area. To be injured within the course or scope of one's employment in the context of the worker's compensation system is not the same thing as to be in the course or scope of one's employment and cause injury to a third person who is foreign to the employee-employer relationship, which is the foundation of worker's compensation system."

I must also reject as meaningless the majority's distinction between worker's compensation and negligence holdings that "[o]ur general negligence theory is one based on *fault*—worker's compensation and many other statutory schemes are of a no-fault nature." While it is obvious that there must be fault on the part of the actor before there can be liability to an injured party, either from the actor or his employer, the imposition of liability upon the employer for the wrongs of his employee is not based on fault; the chances are very good that he is as innocent of wrong as is the victim of the employee's negligence. Reasons for imputing negligence to the employer are legion and as pointed out by Dean Prosser in his Law of Torts, 4th Ed., § 69, p. 458 et seq., all reasons go beyond the notion of control

". . . in holding the defendant liable even though he has done his best. Most courts have made little or no effort to explain the result, and have taken refuge in rather empty phrases, such as 'he who does a thing through another does it himself,' or the endlessly repeated formula of 'respondeat superior,' which in itself means nothing more than 'look to the man higher up.' "

Responsibility of the employer without fault on his part is recognized in *Fruit v. Schreiner*, Alaska, 502 P.2d 133, 140 (1972). In that case the employer, an insurance salesman for Equitable Life Assurance Society, had been attending a sales conference to which out-of-state insurance experts had been invited, and the "Alaska salesmen were encouraged to mix freely with these guests to learn as much as possible about sales techniques . . . ." Scheduled events included cocktail parties. The defendant salesman had apparently indulged in some fairly serious "socializing" and decided that he should go to a nearby town where he thought he might find some of the experts with whom he was encouraged to socialize. Finding no such guests, he was in the course of returning to the town where the conference was being held when he was involved in an accident. The court makes these pertinent observations:

"Since we are dealing with vicarious liability, justification may not be found on theories involving the employer's personal fault such as his failure to exercise proper control over the activities of his employees or his failure to take proper precautions in firing or hiring them. Lack of care on the employer's part would subject him to direct liability without the necessity of involving *respondeat superior.*

"The concept of vicarious liability is broad enough to include circumstances 'where the master has been in no way at fault; where the work which the servant was employed to do was in no sense unlawful or violative of the plaintiff's rights; where there has been no delegation of a special duty; where the tortious conduct of the servant was neither commanded or ratified; but nevertheless the master is made responsible.' [1] This liability arises from the relationship of the enterprise to society rather than from a misfeasance on the part of the employer."

Mr. Justice Boochever then discusses the pertinence of the concept of " 'scope of employment' of the employee-tortfeasor." He observes that

"[t]o assist in delineating the areas of tortious conduct imposing liability, it is helpful to consider what we believe to be the correct philosophical basis for the doctrine.",

---

1. Quotation from Smith, Frolic and Detour, 23 Col.L.Rev. 716, 717 (1923).

and after some discussion makes this statement:

> "The basis of *respondeat superior* has been correctly stated as 'the desire to include in the costs of operation inevitable losses to third persons incident to carrying on an enterprise, and thus distribute the burden among those benefited by the enterprise'."[2]  502 P.2d at 141.

Pointing out that the concept whereby the enterprise bears the loss it has caused has been extended to products liability without fault of either employees or employers, the writer continues:

> "The rule of *respondeat superior*, however, has not been extended to that length and is limited to requiring an enterprise to bear the loss incurred as a result of the employee's negligence. The acts of the employee need be so connected to his employment as to justify requiring that the employer bear that loss." Id. at 141.

The opinion on this phase of the case concludes that

> ". . . there was evidence from which the jury could find that he was at least motivated in part by his desire to meet with the out-of-state guests and thus to benefit from their experience so as to improve his abilities as a salesman." Id. at 142.

A jury finding of liability on the part of the employer was therefore sustained.

In the later case of *Luth v. Rogers and Babler Construction Company*, supra, we find the Alaska court reversing a ruling of the trial court directing a verdict for the plaintiff upon the question of the employer's liability and holding that it was a question of fact for the jury as to whether under the circumstances of the case the employee was acting within the scope of his employment. The employer Rogers was involved in a road construction project some 25 miles away from Anchorage where the defendant employee lived. The company paid every employee on the job, wherever he lived and however he proceeded to get to work, extra compensation of $8.50 per day. The accident occurred while the employee was returning to his home. Holding that there could be liability of the employer in these circumstances the court said:

> "Until recently, this court maintained that *respondeat superior* issues would be resolved by applying the 'right to control' test and other factors delineated in the Second Restatement of Agency. Then, in *Fruit v. Schreiner*, we adopted a modified 'enterprise theory' of *respondeat superior*, without rejecting Restatement criteria." 507 P.2d at 763.

The opinion further notes that in *Fruit* reference had been made to the similarity between Alaska workmen's compensation policy and the enterprise theory of vicarious liability but that the court had not equated "the tort concept 'in the scope of employment' with the workmen's compensation concept 'arising out of and in the course of employment.'" For reasons that are not entirely clear to me the court rejects argument of the plaintiff based on workmen's compensation cases. However, the court recognizes that exceptions to the going-and-coming rule exist in the field of tort law and holds that it is a factual question for the jury whether the employee was within the scope of his employment. The opinion points out that Rogers had not established a work camp at the jobsite thereby necessitating a drive of some 25 miles.

> "Thus, a jury might reasonably infer that Rogers implicitly authorized its employees to commute by automobile and that such commuting was within the scope of Jack's employment. The jury could have reasoned that the additional $8.50 remuneration induced Anchorage-based laborers to commute to Rogers' out-of-town construction project, thus benefiting Rogers. Since the accident occurred during one of these commuting trips, it would not be unfair to require Rogers to pay for the Luths' resulting injuries. On the other hand, the record discloses that Rogers paid its employees the additional $8.50 regardless of whether they commuted to

---

2.  Quotation from Smith, Frolic and Detour, supra n. 1, 23 Col.L.Rev. 716, 718 (1923).

work. Thus, the jury might reasonably infer that the $8.50 was merely a mileage or inconvenience allowance, and that Jack was not on company time while driving home from work." 507 P.2d at 765.

Perhaps the leading case on the question of vicarious liability where the employer pays special compensation because of requirements of travel is the decision of the Supreme Court of California in *Hinman v. Westinghouse Electric Company*, supra. Since the facts relating to *respondeat superior* were unquestioned the court concluded as a matter of law that the doctrine is applicable "and that the trial court erred in its instructions in leaving the issue as one of fact to the jury." 88 Cal.Rptr. at 192, 471 P.2d at 992. Injuries were sustained by the plaintiff as the result of negligence of an employee of the company who was driving home from a jobsite. Westinghouse allowed one and one-half hours pay and $1.30 travel expense for travel to and from the jobsites but had no control over the method or route of transportation used by the employee. In reaching its decision that the going-and-coming rule did not apply in this case the court cited negligence cases as well as an earlier compensation case, *Kobe v. Industrial Accident Commission*, 35 Cal.2d 33, 215 P.2d 736 (1950). The court there had held the going-and-coming rule inapplicable, reasoning that

". . . the employer may agree, either expressly or impliedly, that the relationship shall continue during the period of 'going and coming', in which case the employee is entitled to the protection of the act during that period. Such an agreement may be inferred from the fact that the employer furnishes transportation to and from work as an incident to the employment. * * * It seems equally clear that such an agreement may also be inferred from the fact that the employer compensates the employee for the time consumed in traveling to and from work."

The court in *Hinman* does not cavil about *Kobe* being a workmen's compensation case, but says:

"The above cases indicate that exceptions will be made to the 'going and coming' rule where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." 88 Cal.Rptr. at 191, 471 P.2d at 991.

The majority view the case before us as one where there is the "mere payment of travel remuneration without more." They conclude that Buller "was not actuated by a purpose to serve Frailey" at the time of the accident; they assert that Buller was "not furthering the business interests of appellee in any way"; that it merely made her a "happy employee." Concerning the travel arrangement in *Hinman*, the court said:

"There is a substantial benefit to an employer in one area to be permitted to reach out to a labor market in another area or to enlarge the available labor market by providing travel expenses and payment for travel time. It cannot be denied that the employer's reaching out to the distant or larger labor market increases the risk of injury in transportation. In other words, the employer, having found it desirable in the interests of his enterprise to pay for travel time and for travel expenses and to go beyond the normal labor market or to have located his enterprise at a place remote from the labor market, should be required to pay for the risks inherent in his decision.

"We are satisfied that, where, as here, the employer and employee have made the travel time part of the working day by their contract, the employer should be treated as such during the travel time, and it follows that so long as the employee is using the time for the designated purpose, to return home, the doctrine of *respondeat superior* is applicable. It is unnecessary to determine the appropriate rule to be applied if the employee had used the time for other purposes." [3] 88 Cal.Rptr. at 192, 471 P.2d at 992.

---

**3.** I find no decisions either of the supreme court or court of appeals of California retreating from the position taken in *Hinman*. In *Ducey v. Argo Sales Co.*, 25 Cal.2d 707, 159

The Alaska court was of the opinion that there was at least a question of fact as to whether the employer received a benefit. *Luth*, supra, 507 P.2d at 761. The site where Frailey was working was some 40 miles from the principal market for workers; those workers were required to travel some 40 miles over poorly maintained dirt roads to reach the construction site. In my view of the evidence Frailey was not trying to keep "happy" employees by permitting them to take short periods of time off for personal business as was the case in *Miller v. Reiman-Wuerth Co.*, Wyo., 598 P.2d 20 (1979). It had the problem of enticing available workers to take a job. I believe that *Hinman* and *Luth* are very much in point and establish the rule that we should follow.

It is possible that I seek to extend the rule of vicarious liability, but as was said in *Hinman*, 88 Cal.Rptr. at 190, 471 P.2d at 990, quoting Prosser, Law of Torts, 3d Ed. (1964):

"... 'the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.' (Prosser, Law of Torts, (3d ed. 1964) p. 471; fns. omitted.) [4]

Dean Prosser's citations suggest that the 'modern' justification has been accepted for more than 50 years."

The California court goes on to state:

"Another leading authority also points out that the modern and proper basis of vicarious liability of the master is not his control or fault but the risks incident to this enterprise. 'We are not here looking for the master's fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken. * * * Further, we are not looking for that which can and should reasonably be avoided, but with the more or less inevitable toll of a lawful enterprise.' (2 Harper and James, The Law of Torts (1956) pp. 1376–1377; see also *United States v. Romitti* (9th Cir. 1966) 363 F.2d 622, 666 (applying California law).)" *Hinman*, supra, 88 Cal.Rptr. at 190, 471 P.2d at 990.

The majority seem to feel that the result they reach is consistent with the ruling and opinion of this court in the recent case of *Miller v. Reiman-Wuerth*, supra. That decision quoted extensively from the Restatement of Agency 2d (1958). I do not think that the principles which I here advance are in any way at odds with the holding in that case or with the Restatement. Thus it is said in § 228 that conduct of an employee is within the scope of employment only if:

"(a) it is of the kind he is employed to perform;

"(b) it occurs substantially within the authorized time and space limits;

"(c) it is actuated, at least in part, by a purpose to serve the master, and

" * * *."

Subsection (d) of the section related to liability for the use of intentional force, is not applicable here because it is conceded that Mrs. Buller was only negligent. Considering the other three elements, I submit that

Cal.Rptr. 835, 602 P.2d 755, 764 (1979), reh. denied Jan. 17, 1980, we find the court sustaining an implied jury finding that the employee was not within the scope of her employment at the time of the accident, but nevertheless recognizing the exception to the going-and-coming rule "where the employer compensates the employee for travel time." No such compensation had been paid.

4. This quotation is substantially the same as that found in Prosser, Law of Torts, 4th Ed., p. 459.

she was authorized to drive her car to work, the accident took place within the authorized time and space limits, and her travel was actuated principally, if not entirely, by a purpose to perform duties for Frailey at the plant site. Certainly, from the description of the road conditions which we have received, she was not driving for the fun of it. We said in *Miller* that the determination whether the employee is acting within the scope of employment is a question of fact for the jury; the definition of it or standard under which the fact would be determined was for the court: in a jury case it is incumbent upon the court to instruct the jury as to the meaning of the term "scope of employment." 598 P.2d at 23. That was done in this case, and I think properly, by Instruction No. 8, to which no objection was taken. (Frailey objected only that the whole question of vicarious liability should not be submitted to the jury.) The issue has been decided by the jury and I think that its finding in this regard should not be disturbed.

The question of liability of the two companies, Champlin and Frailey, growing out of their voluntarily taking care of the road from time to time by sprinkling water and grading the same, is a difficult one. I cannot find where either company, having undertaken on occasion to keep the dust down, did anything in a negligent manner that increased the danger or resulted in a dangerous condition of which the travelers on the road would be unaware. I think that we could permit the judgment in this respect to stand only if we were willing to assume that once having undertaken to sprinkle, the companies were absolutely liable for dust which occurred any time it was not convenient for them to sprinkle. This would place a greater burden upon those defendants than I am willing to impose.

I therefore concur in the opinion of the court so far as it holds the two companies not liable for the dusty condition of the road and dissent from that portion which absolves Frailey from liability for the negligence of its employee, Buller.